# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| UNICARE LIFE & HEALTH | ) | |
| INSURANCE COMPANY | ) | |
|       Plaintiff-Stakeholder, | ) | |
| v. | ) | **Civil Action No.  05 - 11355 JLT** |
|  | ) | |
| CHANTAL PHANOR, RUTH PAMPHILE, | ) | |
| BEVERLY PAMPHILE, SONIA PAMPHILE, | ) | |
| WIDLENE CESAR, JUDY PAMPHILE, | ) | |
| JEFFREY PAMPHILE, BRUNEL PAMPHILE | ) | |
| and CARTWRIGHT FUNERAL HOME | ) | |
|       Defendants. | ) | |

_____)

## UNICARE LIFE & HEALTH INSURANCE COMPANY'S MOTION TO DEPOSIT FUNDS, DISMISS UNICARE AND AWARD FEES AND COSTS AND UNICARE'S REQUEST FOR THE APPOINTMENT OF A GUARDIAN AD LITEM FOR THE MINOR DEFENDANTS

Plaintiff-Stakeholder, UniCare Life & Health Insurance Company ("UniCare") hereby moves this court for leave to deposit the $214,274.25 disputed Death Benefit and any applicable interest with the Court; to dismiss UniCare from this action; and to award fees and costs incurred as a result of being subjected to competing claims for the death benefit and bringing this interpleader action.  Due to the conflict between the claims of the Pamphile children and Ruth Pamphile, UniCare also requests the appointment of a guardian ad litem for the minor children, Brunel and Jeffrey Pamphile.  As explained below, Unicare, an entirely disinterested stakeholder, filed this interpleader action when it was faced with Defendants' competing claims for the Death Benefit.  The disputes over the Death Benefit are entirely between and among the Defendants and have nothing to do with UniCare.  As such, UniCare requests: (1) leave to deposit the disputed Death Benefit with the Court and dismissal from this action; (2) an award of the fees

and costs, from the Death Benefit, incurred in bringing this action; and (3) the appointment of a guardian ad litem for the minor children, Brunel and Jeffrey Pamphile.

## FACTS

1.     Effective January 1, 2001, UniCare issued Group Life Insurance Policy No. GI 28518 to Partners Healthcare System, Inc. (the "Policy" or "Plan"), attached hereto at <u>Exhibit A</u>.

2.     The Policy insures a group life insurance benefit provided by Partners Healthcare System, Inc. ("Partners") to its employees.  <u>See Exhibit A</u>.

3.     Joseph Pamphile ("Decedent") is a former employee of Partners who received the group life insurance benefit under the Policy.

4.     Decedent died on March 23, 2005 of lymphoma.  <u>See</u> Death Certificate attached hereto at <u>Exhibit B</u>.[1]

5.     At the time of his death, Decedent had a total death benefit of $228,000.00 under the Policy (the "Death Benefit"), of which $38,000.00 was a Basic Benefit and $190,000.00 was a Supplemental Voluntary Benefit.[2]

6.     As of July 1, 1996, the 100% beneficiary of Decedent's employer-sponsored life insurance coverage was his wife, Ruth Pamphile.  <u>See Exhibit C</u>, attached hereto.

7.     Subsequently, Decedent and Ruth Pamphile separated and in 2001 Decedent filed for divorce.

---

[1] All Exhibits attached hereto have been redacted to eliminate all personal identifiers in accordance with Local Rule 5.3 of this Court.

[2] Due to a Stipulation of Judgment and payment of $13,725 to Cartwright Funeral Home, the remaining Death Benefit is equal to $214,274.25.

8.      Upon information and belief, Decedent's divorce from Ruth Pamphile was never finalized, but they remained separated until Decedent's death.

9.      On or about November 12, 2004, Decedent changed his beneficiary designation from Ruth Pamphile to his children as follows: 15% to Beverly Pamphile, 25% to Judy Pamphile, 45% to Jeffrey Pamphile, and 15% to Brunel Pamphile.  See Exhibit C.

10.     On March 10, 2005, Decedent changed his beneficiary designation to the following:  25% each to Beverly Pamphile, Sonia Pamphile, Widlene Cesar, and Chantal Phanor.  See Exhibit C.

11.     On March 20, 2005, three days before his death, Decedent submitted a beneficiary change form altering his beneficiary designation to 100% to Chantal Phanor.  See Beneficiary Change form attached hereto at Exhibit D.

12.     On March 28, 2005, Chantal Phanor submitted a claim for benefits under the Policy.  See Exhibit E, attached hereto.

13.     By letter dated April 8, 2005, Ruth Pamphile, through counsel, claimed that the an automatic restraining order went into effect at the time Decedent filed for divorce in 2001 and restricted Decedent's ability to change his beneficiary designations on his insurance policies.  See letter dated April 8, 2005 from Ruth Pamphile's counsel, attached hereto at Exhibit F.  Ruth Pamphile, through her attorney, further asserted that she, as the named beneficiary at the time the restraining order went into effect, is entitled to the entire $228,000.00 Death Benefit.  Id.

14.     The Pamphiles also claim that Decedent lacked capacity.  The Pamphiles' Answer at ¶ 33.

15.  Sonia Pamphile and Widlene Cesar, Decedent's sisters, each claim to be entitled to 25% of the Death Benefit pursuant to the March 10, 2005 beneficiary designation.  <u>Sonia Pamphile's Answer</u> at ¶ 1-2; <u>Widlene Cesar's Answer</u> at ¶ 1-2.

16.  Judgment, in the amount of $13,725.75, was entered for Cartwright Funeral Home on January 15, 2006 and Cartwright is no longer a party to this case.  The remaining Death Benefit, less the amount paid to Cartwright Funeral Home, is $214,274.25.


**ARGUMENT**

Plaintiff-Stakeholder, UniCare Life & Health Insurance Company ("UniCare"), filed this Interpleader action in accordance with Rule 22 of the Federal Rules of Civil Procedure to avoid the multiple liability it faced from the conflicting claims made by Ruth Pamphile and Chantal Phanor on the Death Benefit provided for by the ERISA governed life insurance Policy of Decedent.  Ruth Pamphile claims she is entitled to the Death Benefit because an automatic restraining order entered by the Probate and Family Court in 2001 barred Decedent from changing his beneficiary on his life insurance policy.  <u>Facts</u> at ¶ 13; <u>The Pamphiles'</u> <u>Motion to Remand</u> at 2-4.  Chantal Phanor claims she is entitled to the Death Benefit because she was the most recently named beneficiary under the life insurance policy.  <u>Facts</u> at ¶ 11-12.  The Pamphiles also challenged Decedent's legal capacity around the time of his death, bringing the validity of the beneficiary changes of March 10, 2005 and March 20, 2005 into question.  <u>Facts</u> at ¶ 14.  In addition, Widlene Cesar and Sonia Pamphile each claimed to be entitled to 25% of the Death Benefit pursuant to the March 10, 2005 beneficiary designation.  <u>Facts</u> at ¶ 15.  Faced with these conflicting claims and concerned with its exposure to multiple liability, UniCare filed

this Interpleader action pursuant to Rule 22 of the Federal Rules of Civil Procedure in order to have the Court determine which Defendant(s) are entitled to the Death Benefit.

UniCare, as the disinterested stakeholder in this case, requests leave to deposit $214,274.25 and any applicable interest with this Court. UniCare asserts no claim, right or title to the Death Benefit and the Death Benefit shall be distributed as this Court so orders. Once the funds are deposited with the Court, UniCare respectfully requests that it be dismissed and awarded the attorneys' fees and costs incurred in this action. In addition, UniCare requests that a guardian ad litem be appointed for the minor children, Brunel and Jeffrey Pamphile, who both have a claim to the Death Benefit that is separate and distinct from the claim of their mother, Ruth Pamphile.

## I.    UNICARE REQUESTS LEAVE TO DEPOSIT THE DEATH BENEFIT WITH THE COURT AND DISMISSAL FROM THIS CASE

UniCare respectfully requests leave to deposit the remaining $214,274.25 Death Benefit and any applicable interest with the Court pursuant to Rule 67 of the Federal Rules of Civil Procedure. Rule 67 permits a stakeholder to deposit disputed funds with the Court at any time during an action. UniCare presently holds the $214,274.25 disputed Death Benefit, which represents the fund being interpleaded in this matter. UniCare respectfully requests leave of this Court to deposit the $214,274.25 and any applicable interest with the Court.

UniCare has no claim or interest in the disputed Death Benefit and its only involvement in this case is the fact that it holds the Death Benefit. The disputed claims are between and among the Defendants and do not involve UniCare. Once the Death Benefit is paid into the Court, there is no need for UniCare to remain in this case. Consequently, UniCare requests that it be dismissed from this action after it deposits the Death Benefit with the Court.

II.     **UNICARE REQUESTS AN AWARD OF ATTORNEYS' FEES AND COSTS INCURRED DUE TO THE FILING OF THIS INTERPLEADER ACTION**

UniCare requests an award of the attorneys' fees and costs that it has been forced to incur in filing this interpleader action as a result of Defendants' competing claims for the Death Benefit.  As set forth below, UniCare's sole goal with respect to this action has been to pay the interpleaded funds to the proper party, and it should not have to incur the expense of having done so.

"The general practice is that '[a]n interpleader fee is usually awarded out of the fund to compensate a totally disinterested stakeholder who has been, by reason of the possession of the fund, subjected to competing claims through no fault of his own." <u>Foxborough Savings Bank v. Petrosian</u>, 84 F.Supp.2d 172 (D. Mass. 1999)(Keeton, J.).  <u>See also</u>, Smith J. and Zobel, H. 7 Mass. Prac. Rules Practice § 22.5 (1975)(recognizing that "it would be inequitable to require a disinterested stakeholder, willing to pay the entire claim, to bear costs of litigation incident to a dispute solely among other parties).   It is undisputable that UniCare was a totally disinterested stakeholder in this matter whose sole goal, at all times, was merely to pay the Death Benefit to the proper beneficiary.

As of the completion of this motion, UniCare will have incurred $9,743.44 in legal fees and costs in connection with its attempt to ascertain the proper beneficiary of the Death Benefit. Copies of the legal bills, redacted as to confidential matters are attached to the <u>Affidavit of David Crevier at Exhibit G</u>.  These bills reflect legal services by Attorney David Crevier at an hourly rate of $250.00, Attorney Katherine Parsons at an hourly rate of $180, and Jennifer Goncalves at an hourly rate of $95.00.  Attorney Crevier is highly experienced in insurance matters and employee benefits matters and his hourly rate is absolutely fair given his level of expertise. <u>Crevier Aff.</u> at ¶ 1, 5.  Attorney Parsons is an associate experienced in insurance matters and

employee benefits matters and Ms. Goncalves is a paralegal, both of their hourly rates are fair given their levels of expertise.  <u>Crevier Aff.</u> at ¶ 2, 3, 5.

The fees incurred in this action have been entirely due to UniCare's efforts to pay the proper beneficiary.  These include UniCare's Counsel's communications with Defendants to draft the Joint Statement for the Pretrial Conference, to facilitate the settlement agreement resulting in the Stipulation of Judgment as to Cartwright Funeral Homes, and to encourage settlement discussions among the Defendants.  Fees have also been incurred by UniCare to oppose the Pamphiles' Motion to Remand to ensure that this case moves forth in the appropriate Court.  In addition, UniCare has incurred fees to ensure that the interests of all parties are properly represented by explaining to the Pamphiles' counsel numerous times that a guardian ad litem was necessary for the minor Pamphile children and attempting to devise a low expense way of obtaining a GAL, and finally, after the Pamphiles' counsel refused to agree to any sort of appointment, by drafting a request for the appointment of a guardian ad litem.  UniCare should not have to bear the costs of bringing this action and working toward a resolution that merely sought the proper representation of all competing claimants in the appropriate Court.  Accordingly, the Court should award UniCare its costs and fees of $9,743.44 from the Death Benefit of $214,274.25 that UniCare seeks to deposit into Court.

## III.    UNICARE REQUESTS THE APPOINTMENT OF A GUARDIAN AD LITEM

UniCare requests the appointment of a guardian ad litem for the minor Pamphile children, Jeffrey and Brunel Pamphile, to ensure that the interests of all Parties are protected.  The Court must appoint a guardian ad litem because: (1) Jeffrey and Brunel's claims to the Death Benefit

are separate, distinct and in conflict with their mother's claim to the Death Benefit; and (2) failure to appoint a guardian ad litem may result in future liability for the other Parties.

As of July 1, 1996, the 100% beneficiary of Decedent's employer-sponsored life insurance coverage was his wife, Ruth Pamphile. <u>Facts</u> at ¶ 6.  Subsequently, Decedent and Ruth Pamphile separated and in 2001 Decedent filed for divorce.  <u>Facts</u> at ¶ 7.  On or about November 12, 2004, Decedent changed his beneficiary designation from Ruth Pamphile to his children as follows: 15% to Beverly Pamphile, 25% to Judy Pamphile, 45% to Jeffrey Pamphile, and 15% to Brunel Pamphile.  <u>Facts</u> at ¶ 9.  Ruth Pamphile's position is that she is entitled to the Death Benefit because an automatic restraining order entered in the divorce proceedings of Ruth Pamphile and the Decedent prohibited Decedent from changing his beneficiary.  <u>The Pamphiles' Memorandum in Support of Motion for GAL-Type Investigation</u> at 2; <u>The Pamphiles' Answer</u> at ¶ 34; <u>The Pamphiles' Memorandum in Support of Motion for Remand</u> at 2-3.  This position conflicts directly with the claims of her children who are named beneficiaries under the Policy as of November 2004.  Despite this direct conflict of interest, the same attorney represents Ruth Pamphile and her children, including Jeffrey and Brunel.

UniCare recognizes that Beverly and Judy Pamphile are of majority age and maintain the legal capacity to choose their own attorney and make the decision to retain the same counsel as their mother, despite their conflicting claims to the Death Benefit.  However, Jeffrey and Brunel are minors, and lack the legal capacity to make this decision.  Consequently, UniCare requests that this Court appoint a guardian ad litem for Jeffrey and Brunel Pamphile to ensure that the interests of all Parties are protected in these proceedings.

**CONCLUSION**

As set forth above, UniCare respectfully requests that this Court: (1) grant it leave to deposit the Death Benefit and any applicable interest with the Court and dismiss it from this case; (2) award attorneys' fees and costs from the Death Benefit; and (3) appoint a guardian ad litem for Brunel and Jeffrey Pamphile to be paid from the Death Benefit.

Respectfully Submitted,

UniCare Life & Health Insurance Company,

By its Attorneys,

/s/David B. Crevier
David B. Crevier, BBO # 557242
Katherine R. Parsons, BBO # 657280
CREVIER & RYAN, LLP.
1500 Main Street, Suite 2020
Springfield, MA 01115-5727
Tel:  (413) 787-2400
Fax: (413) 781-8235
Email:  dcrevier@crevierandryan.com
            kparsons@crevierandryan.com

**LOCAL RULE 7.1 CERTIFICATION**

I certify that the attorneys in this case have conferred and attempted in good faith to resolve or narrow the issues contained in this motion.

/s/David B. Crevier

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was served on all counsel of record and on Defendants Sonia Pamphile and Widlene Cesar by first class U.S. Mail, postage prepaid this 30th day of January, 2006.

/s/David B. Crevier

# Exhibit A



# Group Insurance Policy

---

Plan Sponsor:              Partners HealthCare System, Inc.
Group Policy No:           GI 28518
Policy Effective Date:     January 1, 2001
Anniversary Date:          January 1
Policy Situs:              Massachusetts

---

UNICARE Life & Health Insurance Company
(herein called UNICARE)

In consideration of the Plan Sponsor's application and payment of the first premium, UNICARE agrees to insure those employees entitled to the insurance provided by this Group Insurance Policy, subject to its terms and conditions.

Payment of the premium indicates the Plan Sponsor's acceptance of this policy.

All premiums due after the first must be paid when or before the date they are due.

Signed for UNICARE by:

PRESIDENT

Thomas C. Deusen
SECRETARY

GP1-1000-1                                                                    PI-1.03

UNICARE Life & Health Insurance Company, 4553 La Tienda Drive, Thousand Oaks, CA 91362

## ASSOCIATED EMPLOYERS

An employer may be included as an Associated Employer if the Plan Sponsor and UNICARE so agree.

An employee of an Associated Employer will be deemed to be an employee of the Plan Sponsor for insurance purposes.

All actions, agreements and notices between UNICARE and the Plan Sponsor will be binding on all Associated Employers.

All the terms and conditions of this Group Policy will apply to an Associated Employer as of the date that employer is added to this Policy.

UNICARE will keep a list of accepted Associated Employers and the effective dates of coverage for each.

## LIST OF ASSOCIATED EMPLOYERS

Massachusetts General Hospital (MGH)
Brigham & Women's Hospital (BWH)
Spaulding Rehabilitation Hospital (Spaulding)
Partners Community Healthcare, Inc. (PCHI)
Partners Home Care
McLean Hospital
Newton-Wellesley Hospital

GPI-1000-2

Amendment No. 1
PI-2.00
(1-1-03)

# ELIGIBILITY

**Eligible Classes**

The following classes of qualified employees are eligible for insurance:

Life Insurance: All eligible employees except Physician Staff of Massachusetts General Hospital
Occupational Accidental Death Insurance: All employees of Massachusetts General Hospital

Additional Eligibility and Effective Date provisions applicable to these Eligible Classes are shown elsewhere in this Group Policy.

**Contributions**

This Group Policy provides for:

       Personal Coverage on a non-contributory and contributory basis.
       Dependent Coverage on a contributory basis.

GPI-1000-4 (PT 1)

PI-4.00 (10-1-03)
Amendment No. 2

# PREMIUMS

**Initial Monthly Premiums**

UNICARE has set the initial premium rates. These rates are shown in the premium rate notice given to the Plan Sponsor with or prior to the delivery of this Group Policy.

These initial premium rates are guaranteed until this Group Policy's third anniversary date (January 1, 2004), except as otherwise provided by this Group Policy. All future rate adjustments will be guaranteed for 12 months.

**Change In Monthly Premium Rates**

UNICARE may set new premium rates to become effective:

(1)      at any time after the initial guarantee period; or
(2)      on the date the terms of this Group Policy are changed,

by providing the Plan Sponsor with a written 90-day notice.

Rates, however, may be changed earlier if there is a change in this Group Policy or if there is a 10% increase or decrease in the number of qualified employees or dependents.

Any change will be made according to the Change in The Group Policy provision herein.

**Calculation**

Premiums may be calculated by multiplying the rate times the applicable number of units of coverage shown on the premium rate notice.

Premiums for added or increased insurance that becomes effective after the first day of a policy month will be charged from the first day of the next policy month.

Premiums for insurance discontinued or decreased after the first day of a policy month will be changed at the end of that policy month.

If, however, insurance is added, discontinued or changed during a policy month due to change in the terms and conditions of this Group Policy, a premium charge will be made or a premium credit given effective as of the date of the change.

Premiums may be calculated by any other method that is agreeable to both UNICARE and the Plan Sponsor.

GPI-1000-5

PI-5.00

# PREMIUMS
## (Continued)

**Premium Payments**

Premium payments are payable in advance of each premium due date.  The first due date is the effective date of this Group Policy.  The due date for subsequent premiums is the first day of each succeeding policy month.  On any due date, UNICARE may, at the Plan Sponsor's written request, agree to change the frequency of premium due dates.  This premium frequency may be annual, semi-annual, or monthly.

Any premium due will not be deemed paid unless the total premium for all insurance in force under this Group Policy on the due date has been paid.

Subject to this Group Policy's Grace Period provision, the payment of premium due will not maintain insurance in force beyond the day prior to the next due date.  Payment of premiums for a period before it is due will not guarantee the insurance for that period.

All premiums are due and payable at UNICARE's Home Office or to its authorized agent in exchange for a receipt signed by an officer of UNICARE and countersigned by the agent.

**Grace Period**

UNICARE will allow the Plan Sponsor a 31 day grace period for the payment of all premiums after the first.  During this 31 day period, this Group Policy will stay in force.  If the owed premium is not paid by the 31st day, this Group Policy will automatically terminate.

Premiums are due for each day this Group Policy is in force.

GPI-1000-6                                                                                                              PI-6.00

# PREMIUMS
## (Continued)

**Experience Rating**

Each policy year during which this Group Policy remains in force, the Plan Sponsor may be entitled to an experience rating refund for basic Life Insurance coverage.  This means the return of some part of the premiums paid by the Plan Sponsor.

The amount of this refund, if any, will be calculated by UNICARE.  It will be based on the amount of premium paid by the Plan Sponsor for that policy year, reduced by:

(1)      the actual claims incurred under this Group Policy; and

(2)      UNICARE's cost to administer these claims as allocated to this Group Policy.

**AUTOMATIC CASH FLOW ADMINISTRATION (ACFA)**

Basic Life Insurance coverage under the Policy are eligible for Automatic Cash Flow Administration (ACFA). The ACFA arrangement reduces the likelihood that redundant Plan Sponsor funds would be held on account by UNICARE. The intent is to allow the Plan Sponsor, during the Policy Year, to pay premium necessary to fund actual claims, and an estimate of retention (the amount required by UNICARE to cover expenses and risk charges). This funding mechanism minimizes the amount of excess funds that can be accrued during the Policy Year and returned to the Plan Sponsor as a dividend.

More specifically, the amount of premium payable each month during the Policy Year (for any coverage subject to ACFA) is the lesser of a) and b) where:

a) is the sum of (i) the dollar amount of paid claims plus estimated retention costs payable for such month; and (ii) the amount of deficit, if any, carried forward from any preceding month in the Policy Year, such deficit having occurred because the amount of 100% Premium (the amount that the Plan Sponsor would pay in absence of ACFA) was less than the amount of paid claims plus estimated retention costs for such preceding months.

b) is the cumulative amount of 100% Premium payable as of such month during the Policy year for coverage eligible for ACFA that has not been paid previously.

Thus, if the sum of year-to-date paid claims plus estimated retention is less than year-to-date 100% Premium, the Plan Sponsor benefits in such cash flow. Under an ACFA billing arrangement, during the Policy Year the Plan Sponsor pays no more than the year-to-date 100% Premium.

The ACFA Premium Rate for eligible coverage and the 100% Premium Rate for such coverage and other coverages under this Policy are contained in the Premium Rate Notice presented to the Plan Sponsor prior to the effective date of the Policy and prior to a change in rates according to the terms of this Policy.

**Year-End Accounting**
A final accounting for the ACFA eligible coverage(s) will be done in the early part of the year following the end of a Policy Year, and any retrospective premium (money due UNICARE) or any excess premium (refund due the Plan Sponsor) will be due at that time.

# TERMINATION

**Plan Sponsor's Request**

The Plan Sponsor may terminate this Group Policy at any time by providing UNICARE written notice.  Upon receipt of this notice, the Group Policy will terminate on the later of:

(1)     the date stated in the notice; or
(2)     the date the notice is received at UNICARE's Home Office.

The Plan Sponsor will be liable for any unpaid premium accrued while the insurance remains in force.

**UNICARE's Request**

UNICARE may terminate this Group Policy at any time by giving the Plan Sponsor 31 days written notice.

In addition, UNICARE may terminate this Group Policy on:
(1)     the date premium is due but not paid by the Plan Sponsor, subject to this Group Policy's Grace
        Period provision;
(2)     the date the number of qualified employees insured for personal insurance is less than 15 or 75%
        of those eligible for such insurance; or
(3)     the date the number of qualified employees insured for dependent insurance is less than 75% of
        those eligible for such insurance.

The Plan Sponsor will be liable for any unpaid premium accrued while the insurance remains in force.

Termination by UNICARE will not prejudice any claims incurred by a covered person prior to the effective date of the termination.

GPI-1000-8                                                                                          PI-8.01

# GENERAL PROVISIONS

**Entire Contract**

The contract between the parties consists of this Group Policy, the Plan Sponsor's application and the applications, if any, of each qualified employee or dependent.

Any statement made by the Plan Sponsor, Associated Employers, and persons insured under this Group Policy will be deemed a representation and not a warranty.

No statement will be used in any contest unless it is in writing and a copy of it is given to the person who made it, or to his or her beneficiary.

**Data To Be Furnished**

The Plan Sponsor will give UNICARE all information UNICARE needs regarding matters pertaining to the insurance. At any reasonable time while this Group Policy is in force and for 24 months after that, UNICARE may inspect any of the Plan Sponsor's documents, books, or records that may affect the insurance or premiums of this Group Policy.

**Misstatement Of Fact**

If the Plan Sponsor gives UNICARE any incorrect information, the relevant facts will be determined to establish if insurance is in effect and in what amount.

No qualified employee or dependent will be deprived of insurance to which he or she is otherwise entitled or have insurance to which he or she is not entitled, because of any misstatement of fact by the Plan Sponsor. Any required adjustment will not affect premiums paid or payable before the most recent policy anniversary date.

**Change In The Group Policy**

No change in this Group Policy may be made unless approved in writing by a Secretary or Assistant Secretary of UNICARE. No other person may change or waive any part of this Group Policy. Any approved change will be added to this Group Policy in writing.

If any change to the Federal Social Security Act affects UNICARE's liability under this Group Policy, UNICARE may change this Group Policy. This change will be effective as of the date of the change to the Social Security Act but will not be made until UNICARE gives the Plan Sponsor 31 days notice.

GPI-1000-9                                                                                          PI-9.00

## GENERAL PROVISIONS
### (Continued)

**Right To Amend**

After this Group Policy has been in force for 6 months, UNICARE may change any or all of this Group Policy's provisions by notifying the Plan Sponsor.  UNICARE must give the Plan Sponsor at least 31 days advance written notice of any change.

**Non-Waiver Of Policy Terms**

UNICARE's failure to insist upon compliance with any terms of this Group Policy, at any time or under any circumstance, will not operate to waive or modify these terms.

**Incontestability**

Except for non-payment of premium, the insurance provided by this Group Policy cannot be contested after such insurance has been in effect for a period of 2 years.

**Certificate**

UNICARE will give the Plan Sponsor an individual certificate for each insured plan member.  The certificate will contain:
(1)     benefit amounts, maximum limits and other scheduled information;
(2)     the benefit plan provisions;
(3)     certain eligibility and effective date of insurance rules;
(4)     certain termination of insurance rules;
(5)     exclusions; and
(6)     other provisions pertaining to state insurance law requirements.

**No Replacement For Workers' Compensation**

This Group Policy does not replace Workers' Compensation or affect any requirement for Workers' Compensation coverage.

**Time Period**

All periods begin and end at 12:01 A.M., standard time, at the Plan Sponsor's address.

**Jurisdiction**

This Group Policy is governed by the laws of the state where it is delivered.

GPI-1000-10                                                                                        PI-10.00

## INCORPORATION PROVISION

The following pages which comprise group insurance booklet(s):

28518-A
28518-A (10/1/2003) Accidental Death Insurance Schedule
28518-B (1/1/2002)
28518-B (1/1/2002) Department Head Schedule
28518-C
28518-D (10/1/03)
28518-E (1/1/2005) North Shore Medical Center – Class 1
28518-F (1/1/2005) North Shore Medical Center – Class 2
28518-G (1/1/2005) North Shore Medical Center – Class 3
28518-H (1/1/2005) North Shore Medical Center – Class 4

And the following pages which comprise group insurance booklet amendments:

28518-A, Booklet Amendment No. 1 (effective 1/1/2001)
28518-B, Booklet Amendment No. 1 (effective 1/1/2002)
28518-C, Booklet Amendment No. 1 (effective 1/1/2003)
28518-D, Booklet Amendment No. 1 (effective 10/1/2003)
28518-C, Booklet Amendment No. 2 (effective 1/1/2003)

are hereby incorporated into, and made part of, this Group Policy.

### IMPORTANT NOTICE

This booklet contains a Personal Accelerated Death Benefit provision within the Personal Life Insurance section. Benefits are payable as shown on the Schedule. Please refer to the Personal Accelerated Death Benefit provision of this booklet for a complete benefit description.

This Personal Accelerated Death Benefit is NOT a long–term care policy or a nursing home insurance policy. You may use your Personal Accelerated Death Benefit for any purpose.

**PERSONAL LIFE INSURANCE AND SUPPLEMENTAL LIFE INSURANCE BENEFITS, IF ANY, WILL BE REDUCED IF YOU ARE PAID A PERSONAL ACCELERATED DEATH BENEFIT.**

**RECEIPT OF PERSONAL ACCELERATED DEATH BENEFITS MAY AFFECT ELIGIBILITY FOR PUBLIC ASSISTANCE PROGRAMS SUCH AS, BUT NOT LIMITED TO, MEDICAID.**

1    28518-A (1/1/2001)

# TABLE OF CONTENTS

Page
Number

**Certificate** ...................................................................................3

**Schedule of Benefits** .....................................................................4

**Basic Terms** ................................................................................7

**Plan Membership**
    Eligibility for Insurance ...........................................................8
    Effective Date of Insurance......................................................9
    Discontinuance of Insurance...................................................11

**Coverage Provisions**
    Personal Life Insurance .........................................................12
    Dependent Life Insurance ......................................................19

**Claims and Plan Member Rights**
    How to Claim Benefits............................................................21

**Claims Disclosure Notice Required By ERISA**...................................24

28518-A (1/1/2001)           2

## CERTIFICATE

UNICARE Life & Health Insurance Company certifies that it has issued a Group Policy Number GI 28518 insuring certain employees of

### Partners HealthCare System, Inc

### (herein called the Plan Sponsor)

This booklet describes the benefits provided as of January 1, 2001. Certain terms of the Group Policy which affect your insurance are contained in the following pages.

The Group Policy was issued in the state of Massachusetts. Its laws and rules will govern in resolving any questions about the Group Policy.

While you remain insured, this booklet is your Certificate of Insurance. It replaces any prior booklet given to you for the types of insurance described here.

4553 La Tienda Drive                    UNICARE Life & Health
Thousand Oaks, CA 91362                   Insurance Company

PRESIDENT

3                    28518-A (1/1/2001)

## SCHEDULE OF BENEFITS

Your amounts of personal and dependent insurance are determined by this schedule.

Changes in amounts of personal insurance under this schedule are effective on the date they apply to you. However, changes due to your age or retirement will be the only changes to become effective while you are disabled. Here, the term "disabled" means that an injury or illness prevents you from doing substantially all of your usual duties for the plan sponsor.

Changes in amounts of Dependent Life Insurance under this schedule are effective on the date they apply to the dependent.

## PERSONAL LIFE INSURANCE

### Basic Amount

An amount equal to one times your annual earnings, rounded to the next higher $1,000, if not already a multiple thereof, to a maximum of $500,000.

When you attain age 65, your amount of Personal Basic Life Insurance shall be reduced to 65% of the amount for which you would otherwise be eligible. When you attain age 70, your amount of Personal Life Insurance shall be reduced to 50% of the amount for which you would otherwise be eligible. These reductions occur on January 1st following an employee's birthday.

No life insurance is continued at retirement.

### Supplemental Amount

An amount equal to annual earnings rounded to the next higher $1,000, if not already a multiple thereof, times one, two, three, four or five, to a maximum of $1,000,000*.

* Does not apply to closed group of employees as shown in the Plan Sponsor's records.

28518-A (1/1/2001)                 4

**Evidence of Insurability**

No evidence of insurability will be required for employees, spouses and/or children on the January 1, 2001 Special Open Enrollment. After that date, the following requirements will be in place:

- Newly eligible employees may elect three (3) times annual earnings, up to $250,000 with no evidence required. Amounts over three (3) times salary, or over $250,000 are subject to evidence of insurability.

- During Open Enrollment, or if you have a change in family status, you may elect for the first time or increase your amount by one (1) times annual earnings up to $150,000 with no evidence of insurability required. Amounts over one (1) times annual earnings, or over $150,000 are subject to evidence of insurability.

- Spousal coverage election and/or increase at any time other than date of initial eligibility, or eligibility after marriage, is subject to evidence of insurability.

28518-A (1/1/2001)

**PERSONAL ACCELERATED DEATH BENEFIT**

Your Personal Accelerated Death Benefit is an amount equal to the lesser of:

1. 50% of the combined amount of Personal Life Insurance and Supplemental Life Insurance to which you are entitled on the date you apply in writing for this benefit; or

2. $100,000.

However, the minimum Personal Accelerated Death Benefit the insurer will pay is $10,000.

If the amount of your Personal Life Insurance and Supplemental Life Insurance is scheduled to reduce within 12 months following the date you apply for a Personal Accelerated Death Benefit, your Personal Accelerated Death Benefit will be based on the reduced amount.

**DEPENDENT LIFE INSURANCE**

Spouse*

| | |
|---|---|
| Option I | $10,000 |
| Option II | $25,000 |
| Option III | $50,000 |
| Option IV | $75,000 |
| Option V | $100,000* |

| | |
|---|---|
| Child | $10,000 |

\* Does not apply to closed group of employees

28518-A (1/1/2001)          6

## BASIC TERMS

Here, some basic terms of the benefit plan are discussed. Where these terms are used in this booklet, they have the meaning explained here.

**Annual Earnings:** means your basic rate of compensation based on the basic work week established by the Plan Sponsor. It does not include bonuses, overtime, hours beyond your regular schedule, shift differential, incentive pay or other forms of extra compensation.

**Covered Person:** means a plan member or a dependent with respect to whom a plan member is insured by the group policy.

**Doctor:** means a physician licensed to practice medicine. It also means an osteopath, podiatrist, chiropractor, psychologist, optometrist or dentist. Such a doctor must be licensed or certified by the state in which the services are rendered and acting within the scope of that license or certificate.

**Injury and Illness:** in this plan, the word "injury" means an accidental bodily harm and the word "illness" means:

1. a sickness that impairs a covered person's normal functioning of mind or body; and
2. the pregnancy, childbirth and related medical conditions of a covered person.

**Insurer:** Benefits are provided through a group insurance policy. The "insurer" who issued that policy is UNICARE Life & Health Insurance Company. Their home office is located at 4553 La Tienda Drive in Thousand Oaks, CA 91362. Inquiries to the insurer should be made to that office. Please include your group policy number as shown in the Certificate in the front of this booklet. The Claims and Plan Member Rights section of this booklet tells where and how benefit claims should be made.

**Personal and Dependent Insurance:** "Personal insurance" means your insurance under the group policy with respect to yourself. The words "dependent insurance" refer to insurance for your dependents under the group policy. The Plan Membership section of this booklet discusses how you may obtain insurance under the group policy for yourself and your qualified dependents.

**Plan Member or Member:** means a person who is insured by the group policy with respect to himself or herself.

7          28518-A (1/1/2001)

**Plan Sponsor:** means the employer who makes this benefit plan available to you.

## PLAN MEMBERSHIP

### ELIGIBILITY FOR INSURANCE

This section tells how you may become insured. The term "personal insurance" means your insurance under the group policy with respect to yourself. Reference to "dependent insurance" means your insurance under the group policy with respect to your dependents.

#### Personal Insurance

To obtain personal insurance, you need to be a qualified employee. You are a "qualified employee" only if you meet all of these requirements:

1. you are a full–time employee of the plan sponsor, working for pay on a scheduled normal work week of at least 20 hours, and
2. you perform that work at the plan sponsor's usual place of business, except for duties of a kind that must be done elsewhere, and
3. you are in a covered employment class named in the group policy.

Specific information regarding the group policy and its terms may be obtained from the plan sponsor.

If you are a qualified employee on the Effective Date, you are eligible for personal insurance on that date. Otherwise, you become eligible on the date you become a qualified employee.

#### Dependent Insurance

If you are a qualified employee, you may obtain dependent insurance for your qualified dependents. Your "qualified dependents" are your spouse and children as defined and limited here.

The term "spouse" means your husband or wife. Your marriage must not have ended in a valid divorce decree or annulment.

The term "spouse" also includes your same-sex domestic partner. You and your same-sex domestic partner must meet the following criteria to qualify your same-sex domestic partner for insurance under this group policy. You and your same-sex domestic partner:

28518-A (1/1/2001)              8

1. are and have been each other's sole domestic partner, and have maintained the same principal place of residence and intend to do so indefinitely;

2. are not married or related by blood; and

3. are jointly responsible for each other's welfare and financial obligations.

Reference to your "child" means your direct offspring. The term also includes your stepchild, a legally adopted child, a child placed with you for the purpose of adoption, your foster child or the child of your same-sex domestic partner. Any such child must be unmarried and under age 25. Such a child who has reached age 19, but less than 25, must be a registered full–time student at an accredited institution of higher learning.

Your spouse or child who is a full–time member of a country's armed forces is not a qualified dependent. Your child who has personal insurance under the group policy may not be your qualified dependent unless he or she elects dependent insurance in place of the similar personal insurance. If you and your spouse both have personal insurance under the group policy, you may insure each other as dependents and your qualified dependent children may be insured by both of you. You are eligible for dependent insurance on the earliest date that:

1. you are in an employment class covered for dependent insurance; and

2. you are eligible for similar personal insurance under the group policy; and

3. you have a qualified dependent.

**EFFECTIVE DATE OF INSURANCE**

Once you have become eligible for insurance, this section tells when your insurance will begin.

**Personal Insurance**

Except as explained in this section, your personal insurance will begin on the date you become eligible for such insurance.

The plan sponsor may require employees to contribute toward the cost of all or part of their personal insurance. Any such contributory insurance will not become effective for you before you sign a form agreeing to make those contributions. The form may be obtained from the plan sponsor. If you sign the form more than 31 days after

9

28518-A (1/1/2001)

you became eligible, your contributory insurance will be deferred until the date the insurer approves the employee's written evidence of insurability.

**Special Provision for Supplemental Life Insurance**

In addition to the provisions shown above, your Supplemental Life Insurance will not become effective until the date the insurer approves your evidence of insurability if you:

1. apply for Supplemental Life Insurance more than 31 days after your eligibility date; or
2. elect an amount of Supplemental Life Insurance for which evidence of insurability is required, if such election is allowed.

If you later choose to increase the amount of Supplemental Life Insurance, the increased amount will not become effective until the date the insurer approves your evidence of insurability.

**Dependent Insurance**

Any dependent insurance for which you are eligible will begin on the date that:

1. you have similar personal insurance in effect under the group policy; and
2. you have a qualified dependent who can be insured as discussed in this section.

The plan sponsor may require employees to contribute toward the cost of all or part of their dependent insurance. If so, the only qualified dependent who may become insured before you agree to those contributions is your newborn child. The form for this agreement may be obtained from the plan sponsor. If you sign the form more than 31 days after you became eligible for dependent insurance, such contributory insurance will be deferred until the date the insurer approves written evidence of insurability for each qualified dependent.

Your newborn child is insured from the date he or she is born. Within 31 days after the child is born, you need to tell the plan sponsor and agree to any required contributions toward the cost of the child's insurance. Otherwise, insurance for the child will cease at the end of that 31 day period.

You may acquire a new qualified dependent while your insurance for other dependents is in effect. If so, the new dependent will automatically become insured, except as noted in the next

28518-A (1/1/2001)            10

paragraph. You may have only one dependent same-sex domestic partner enrolled for dependent insurance under the group policy at any time.

Your newborn child is the only dependent whose insurance may begin on a day that he or she is a hospital inpatient. Insurance so deferred for any other dependent will become effective on the day he or she is discharged from the hospital.

## DISCONTINUANCE OF INSURANCE

Your personal and dependent insurance under each coverage will cease on the first to occur of these dates:

1. the date the group policy is discontinued.
2. the date you are no longer eligible for that coverage. This may be due to a change in the group policy or because you transfer to an employment class that is not eligible.
3. the date ending the last period for which you made any required contribution toward the cost of that insurance.
4. the date you cease active work for the plan sponsor, except that:
   a. if you are disabled or on a leave of absence or temporary layoff, your insurance may continue up to 12 months.
   b. If you cease active work under a severance agreement, your insurance may continue for the duration of a severance period, not to exceed 12 months, unless otherwise specified in the severance agreement.
   c. if you cease active work on military leave of absence, insurance may continue up to 12 months.
   d. If you cease active work due to a disability that is not approved for Total Disability Premium Waiver, insurance may continue for the period you remain in a benefits eligible class, provided you make the required contributions.

Specific information regarding the group policy and its terms may be obtained from the plan sponsor.

Your insurance for any one dependent will not continue beyond the date he or she ceases to be your qualified dependent.

11          28518-A (1/1/2001)

## COVERAGE PROVISIONS

### DESCRIPTION OF THE COVERAGES

The pages of this section specify when plan benefits will be paid. Any conditions governing whether, and how much benefit is paid for those events are also discussed in this section.

To receive plan benefits, you must be insured as described in the Plan Membership section of this booklet. Then, your amounts of insurance are determined by the Schedule of Benefits.

Should you become entitled to benefits, the Claims and Plan Member Rights section of this booklet tells how to present your claim.

### ASSIGNMENT

As a plan member planning your estate, you may wish to assign ownership of any death benefits to someone else. The group policy allows assignment of all present and future right, title, interest and incidents of ownership as to: (a) any life insurance; (b) any disability provision of life insurance; and (c) any accidental death insurance under this plan. The assignment will include, but is not limited to, the rights: (a) to make any contribution required to keep the insurance in force; (b) to exercise any conversion privilege; and (c) to change the beneficiary named.

### PERSONAL LIFE INSURANCE

#### Death Benefit

The insurer will pay a benefit if you die while insured by this coverage. This death benefit will be paid to your beneficiary when due proof of your death is received by the insurer. The needed claim forms may be obtained from the plan sponsor or the insurer. See the Schedule of Benefits of this booklet for the amount of death benefit to be paid.

The death benefit is normally paid in one sum. You may, however, elect that payment be made in installments. This is called a settlement option. If no settlement option is in effect upon your death, your beneficiary may then elect such an option. Any settlement option requires a written agreement with the insurer. The plan sponsor should be contacted for instructions.

**Beneficiary**

You alone have the right to name your "beneficiary". That term means the person or persons to whom the death benefit will be paid. You may change beneficiaries at any time. To do so, written notice must be given to the plan sponsor for entry in the plan's records. Then, the change will be effective on the date of the notice. But if you die before the notice is recorded, any death benefit the insurer may have already paid will be deducted from the amount payable to the new beneficiary.

If you name more than one person to share any death benefit, you should tell how the benefit is to be divided among them. Otherwise, they will share the benefit equally. All rights of any beneficiary cease if he or she dies before you do.

**Alternate Payment Provisions**

If there is no living beneficiary when your death occurs, or none has been named, the death benefit will be paid to the executors or administrators of your estate. If there is no executor or administrator, the insurer may at its option: (a) pay the benefit to your then living spouse; or (b) if there is no living spouse, pay equal shares of the benefit to your then living children; or (c) if there are no living children, pay the benefit in equal shares to your direct parents then living.

It may happen that the person to be paid a benefit (called the "payee") is legally unable to give a valid receipt for the payment. If so, the insurer may elect instead to pay up to $50 of that benefit per month to another person or institution. But that other person or institution must appear to the insurer to have assumed custody and principal support of the payee. Such payments will cease when a claim for the unpaid balance is made by a duly appointed guardian or committee of the payee. The insurer will be discharged to the extent of any such payments made in good faith.

It may be that one or more persons have incurred expenses for your fatal condition or burial. If, in the insurer's judgment this is true, the insurer may apply part of any death benefit toward reimbursement of such persons. But the total amount of death benefit so applied shall not be more than $250. Then, your beneficiary will receive only the unpaid balance of the death benefit. The insurer will be discharged to the extent of any such payments made in good faith.

13                    28518-A (1/1/2001)

**Total Disability Premium Waiver – For Supplemental Life Insurance**

Normally, the plan sponsor must pay the insurer a premium for each period that you are insured. This section tells how your personal life insurance can be continued without premiums if you become totally disabled before your 70th birthday.

Here, the term "totally disabled" means that an injury or illness prevents you from performing any occupation for which you are qualified by education, training or experience. If you can engage in any such occupation, you are not deemed to be "totally disabled".

**Death Before Proof Is Due**

If you die within the first 12 months of being totally disabled, a death benefit may be payable, even if premium payments for your insurance have stopped. In this case, due proof is required that:

1. you became totally disabled while insured and before your 70th birthday; and that
2. you remained totally disabled at all times until your death occurred.

When the insurer receives such proof, a death benefit will be paid to your beneficiary.

**Proof Required Within 12 Months**

Within the first 12 months that you are totally disabled, but have not died, due proof must be given that:

1. you became totally disabled while insured and before your 70th birthday; and that
2. you have continued to be totally disabled for at least 9 months, but less than 12 months.

Such proof may be given by you or someone acting for you. When the insurer receives that proof, it will provide personal life insurance for you without premiums while it is shown that you remain totally disabled.

While your personal life insurance is provided without premiums, due proof that you remain totally disabled will be required at reasonable intervals. Such proof will be required at least once a year. The insurer, at its expense, may also require that you be examined by its doctor at reasonable intervals. Such exams by a

28518-A (1/1/2001)          14

doctor will not be more often than once a year after your insurance has been provided without premiums for two years.

If you die while your personal life insurance is provided without premiums, the insurer will pay a death benefit. Due proof is required that you remained totally disabled until your death occurred. When that proof is received, the insurer will pay that death benefit to your beneficiary.

**Amount Of Benefit Provided**

The amount of personal life insurance provided for you without premiums will normally be the amount for which you were insured by the group policy when you became totally disabled. However, the Schedule of Benefits of this booklet may require that life insurance amounts be reduced at a certain age or upon retirement; in such case, your insurance provided without premiums will be so reduced when those events occur.

One other factor may affect your amount of personal life insurance provided without premiums. A right to convert your life insurance under the group policy to an individual policy is explained later in this coverage. Any part of your life insurance that you may have converted will not be provided without premiums unless:

1. you were totally disabled when you applied to convert; and
2. you return the individual policy to the insurer with no claim other than a refund of the premiums you paid for it.

**When A Premium Waiver Ceases**

Insurance provided for you without premiums will cease when any of these events occur:

1. you are no longer totally disabled; or
2. due proof that you remain totally disabled is not provided when required by the insurer; or
3. you do not allow a doctor to examine you when required by the insurer.

Your insurance will also cease if you reach normal retirement age and do retire.

When your insurance without premiums ceases, you may be entitled to the Right To Convert provision explained later in this coverage. That Right To Convert provides insurance for the next 31 days. During that time:

15        28518-A (1/1/2001)

1. If you again become an active qualified employee, you may not convert your insurance. But your personal life insurance that requires premiums will be resumed.
2. If you do not become an active qualified employee, you may convert to an individual policy of life insurance. It will be as though your employment had ceased when your insurance without premiums ceased. The things you must do to obtain such a policy are discussed in the Right To Convert provision.

While you are totally disabled, it may happen that:

1. the group policy is discontinued; or
2. the group policy is changed to terminate personal life insurance.

In either event, while you continue to be totally disabled, you will have the same rights as though this life insurance was still in effect.

**Personal Accelerated Death Benefit**

The group policy provides a personal accelerated death benefit. You may elect to receive a portion of your personal life insurance and supplemental life insurance benefit while you are still living. This personal accelerated death benefit will be paid, provided:

1. you elect the benefit in writing on the form provided by the insurer or the plan sponsor;
2. you submit to the insurer written certification from a doctor that you have a life expectancy of 12 months or less, and the insurer approves this certification.

The insurer reserves the right to have you examined by one or more doctors of its choice in connection with your claim for a personal accelerated death benefit. Such an examination will be done at the insurer's expense.

See the Schedule of Benefits in this booklet to determine the maximum amount of personal accelerated death benefit you may elect.

**Payment Provisions**

The personal accelerated death benefit must be paid to you during your lifetime. You may elect less than the maximum benefit, but you can receive a personal accelerated death benefit only once. Payment will be made in one lump sum to you. If you have received a personal accelerated death benefit and then you recover

from the qualifying condition, you will not be required to refund the benefit paid to you.

**Effect of Payment on Other Benefits**

The amount of your personal life insurance and supplemental life insurance will be reduced by the amount of personal accelerated death benefit paid to you. The remaining personal life insurance and supplemental life insurance benefit, if any, will be paid in accordance with the terms of the group policy. Any amount of personal life insurance and supplemental life insurance you may have a right to convert, as explained later in this coverage, will be reduced by the amount of personal accelerated death benefit paid to you.

**Payment of Premium**

Premium payments must continue, and will be based on the reduced amount of your personal life insurance and supplemental life insurance.

When the plan sponsor stops paying premium for you, you are no longer eligible for a personal accelerated death benefit unless:

1. your doctor certifies that the qualifying condition was present before the date that premium payments ceased;
2. your doctor certifies that you have a life expectancy of 12 months or less from the date that premium payments ceased; and
3. you apply for an accelerated death benefit within 31 days from the date that premium payments ceased.

However, you will again be eligible for a personal accelerated death benefit when you are approved for the Total Disability Premium Waiver which is explained in this coverage.

**Exclusions**

The personal accelerated death benefit will not be paid if:

1. you submit written certification from your doctor that you have a life expectancy of 12 months or less, and the insurer disapproves this certification;
2. you have received an accelerated death benefit under the group policy;
3. you are required by law or court order to use your personal life insurance and supplemental life insurance benefit to meet the claims of creditors, whether in bankruptcy or otherwise;

28518-A (1/1/2001)

4. you are required by a government agency to use your personal life insurance and supplemental life insurance benefit to apply for, receive, or keep a government benefit or entitlement;

5. you live in a community property state, and the insurer has not received consent in writing from your spouse;

6. you are divorced, and as a part of your court approved divorce agreement all or part of your personal life insurance and supplemental life insurance must be paid to your children or former spouse; or

7. you have assigned your rights under the personal life insurance coverage to an assignee or an irrevocable beneficiary, and the insurer has not received consent, in writing, that the assignee or irrevocable beneficiary has agreed to payment of the personal accelerated death benefit to you.

**Right To Convert**

If your personal life insurance ceases or is reduced, you could have a right to "convert" that group insurance to an individual policy. This section tells when you may acquire that right.  Note that your prompt application is required at that time.

**Changes In Your Status**

You can obtain an individual policy of life insurance if all or part of your personal life insurance under the group policy ceases for certain reasons.  Those reasons are:

1. termination of your active employment with the plan sponsor or transfer to a class of ineligible employees; or

2. your attainment of an age at which the group policy requires life insurance to be reduced.

Evidence of your health will not be required.  But you must apply in writing and pay the first premium to the insurer within 31 days after that personal life insurance ceased.

Such an individual policy will not include disability benefits.  The policy shall be one of the forms then normally being issued by the insurer except term insurance.  At your option, the amount of your policy may equal or be less than your personal life insurance that ceased under the group policy.  The premium will be determined by the form and amount of your policy, as well as by your class of risk and age on its effective date.

28518-A (1/1/2001)          18

**Group Policy Termination Or Change**

Your personal life insurance under this plan may cease because:

1. the group policy is terminated; or
2. the group policy is changed to exclude your class of employees.

In such event, you have the right to obtain an individual life insurance policy under certain conditions. One condition is that you have been insured by the group policy for at least five years. The other condition is that your personal life insurance was not fully replaced by this or another group insurance plan within the next 31 days. I f both of these conditions are met, all other terms of this Right To Convert will apply as though your status had changed; but the amount of your individual policy will not exceed $2,000.

**Death While Eligible To Convert**

Any individual policy issued to you under this Right To Convert provision will become effective at the end of the 31 day period allowed for you to apply. If you should die during that 31 days, a death benefit will be paid by the group policy. This is true regardless of whether you applied for an individual policy. The amount of benefit payable will be the full amount you were entitled to convert. The benefit will be paid to the beneficiary you last named, whether for the group policy or a conversion policy.

**DEPENDENT LIFE INSURANCE**

**Death Benefit**

The insurer will pay a benefit upon the death of a dependent for whom you have insurance under this coverage. This death benefit is payable to you when the insurer receives due proof of the dependent's death. The required claim forms will be provided by the plan sponsor or the insurer. The Schedule of Benefits of this booklet shows the amount of death benefit to be paid.

**Right To Convert**

If a dependent's life insurance under the group policy ceases, he or she could have a right to "convert" that group insurance to an individual policy. This section tells when the dependent may acquire that right. Note that prompt application is required at that time.

19                28518-A (1/1/2001)

**Ceasing Qualification For Group Coverage**

A dependent can obtain an individual policy of life insurance if his or her group life insurance under the group policy ceases for certain reasons. Those reasons are:

1. your death or termination of employment; or
2. your transfer to an ineligible class of employees; or
3. your insured spouse's divorce or annulment of marriage; or
4. your insured child ceases to be a qualified dependent.

Evidence of the dependent's health will not be required. But the dependent must apply in writing and pay the first premium to the insurer within 31 days after his or her insurance ceased. If the dependent is a minor or otherwise legally unable to apply, you or another legal guardian may apply on the dependent's behalf.

The individual policy will insure the dependent only and will not include disability benefits. The policy shall be one of the forms then normally being issued by the insurer except term insurance. At the dependent's option, the amount of the policy may equal or be less than his or her dependent life insurance that ceased under the group policy. The premium will be determined by the form and amount of the dependent's policy, as well as by his or her class of risk and age on its effective date.

**Group Policy Termination Or Change**

A dependent's life insurance under the group policy may cease because:

1. the group policy is terminated; or
2. the group policy is changed to exclude your class of employees.

In such event, the dependent has the right to obtain an individual policy of life insurance under certain conditions. One condition is that the dependent has been insured by this coverage for at least five years. The other condition is that his or her dependent life insurance was not fully replaced by this or another group insurance plan within the next 31 days. If both of these conditions are met, all other terms of this Right To Convert provision will apply; but the amount of the dependent's individual policy will not exceed $2,000.

28518-A (1/1/2001)          20

**Death While Eligible To Convert**

Any individual policy issued to a dependent under this Right To Convert will become effective at the end of the 31 day period allowed for him or her to apply. If the dependent should die during that 31 days, a death benefit will be paid by the group policy. This is true regardless of whether or not the dependent applied for an individual policy. The amount of benefit payable will be the full amount he or she was entitled to convert. If the dependent has applied for a policy under this Right To Convert, the benefit will be payable to the beneficiary he or she named. Otherwise, the benefit will be paid to you. But if the payee was not living when the dependent's death occurred, the benefit will be paid to the dependent's estate.

## CLAIMS AND PLAN MEMBER RIGHTS

**How To Claim Benefits**

Due written proof of claim is required in order to receive benefits under the group policy. The requirements for Personal Life Insurance proof forms are discussed in that coverage. The requirements for other types of group coverage are discussed here.

**Notice of Claim**

Notice of a claim must be given within 20 days after a covered loss starts, or as soon as reasonably possible. Written notice can be given to the insurer at its home office or to the insurer's agent. Reference to a "loss" merely means that an event occurred or an expense was incurred for which a benefit is payable under the group policy. The notice must identify you along with the group policy number shown in this booklet.

**Claim Forms**

When the insurer receives the notice of claim, it will send the claimant forms for filing proof of loss. The needed forms may also be obtained from the plan sponsor. If these forms are not given to the claimant within 15 days, the claimant will meet the proof of loss requirements by giving the insurer a written statement of the nature and extent of the loss within the time limit stated in the Proof of Loss section.

**Proof of Loss**

Due written proof of loss must be given to the insurer within 90 days after such loss. Failure to furnish the proof within that time shall not invalidate or reduce the claim if the proof is given as soon as reasonably possible. But, unless delayed by the claimant's legal incapacity, the required proof must be furnished within 2 years of the specified time.

**Filing Claim Forms**

The proof of loss "claim forms" contain instructions as to how they should be completed and where they should be sent. Be sure to fully complete your portion of the forms. Unanswered questions may delay the processing of your claim.

**Payment of Claims**

All benefits will be paid as soon as the insurer receives the required proof of loss.

Any death benefit will be paid as discussed in the coverage description. All other benefits are payable to the plan member. But, if the plan member is unable to execute a valid release, the insurer can:

1. pay any providers on whose charges the claim is based toward satisfaction of those charges; or
2. pay any person or institution that has assumed custody and principal support of the plan member; this will not be done, though, after claim is made by a duly appointed legal representative of the plan member.

If the plan member dies while any accrued benefits remain unpaid, the insurer can pay any provider on whose charges the claim is based toward satisfaction of those charges. Then, any benefits that still remain unpaid can be paid to anyone related to the plan member by blood or marriage.

The insurer will be discharged to the extent of any payments made in good faith under this Payment of Claims provision.

28518-A (1/1/2001)          22

# Exhibit B

(INSTRUCTIONS ON REVERSE SIDE)
FOR USE BY
PHYSICIANS AND
MEDICAL EXAMINERS

The Commonwealth of Massachusetts
STANDARD CERTIFICATE OF DEATH
REGISTRY OF VITAL RECORDS AND STATISTICS

| DECEDENT - NAME FIRST | MIDDLE | LAST | SEX | DATE OF DEATH (Mo., Day, Yr.) |
|---|---|---|---|---|
| Joseph | Pamphile | | M. | March 23, 2005 |

| PLACE OF DEATH (City/Town) | COUNTY OF DEATH | HOSPITAL OR OTHER INSTITUTION - Name (If not in either, give street and number) |
|---|---|---|
| 4a Weymouth | 4b Norfolk | 4c Colonial Nursing & Rehab. Center |

PLACE OF DEATH (Check only one):
HOSPITAL:
☐ Inpatient ☐ ER/Outpatient ☐ DOA
OTHER
☑ Nursing Home ☐ Residence ☐ Other (Specify)

SOCIAL SECURITY NUMBER ███████

IF US WAR VETERAN SPECIFY WAR

WAS DECEDENT OF HISPANIC ORIGIN? (If yes, Specify Puerto Rican, Dominican, Cuban, etc.)
☑ NO ☐ YES
8a Specify:

RACE (e.g. White, Black, American Indian, etc.) (Specify)
8b Black

DECEDENT'S EDUCATION (Highest Grade Completed)
Elementary Sec (0-12) 12   College (1-4, 5+) +4

AGE - Last Birthday
10a
UNDER 1 YEAR MOS. DAYS
UNDER 1 DAY HOURS MINS

DATE OF BIRTH (Mo., Day, Yr.)
10d ████

BIRTHPLACE (City and State or Foreign Country)
11 Port Au Prince, Haiti

MARRIED, NEVER MARRIED WIDOWED OR DIVORCED
12 Married

LAST SPOUSE (If wife, give maiden name)
13 Ruth Temosthenes

USUAL OCCUPATION (Prior - If Retired)
14a Accountant

KIND OF BUSINESS OR INDUSTRY
14b Health Care

RESIDENCE - NO. & ST., CITY/TOWN, COUNTY, STATE/COUNTRY
15a 1751 Washington Street, No. 6, Braintree, Norfolk, MA

ZIP CODE
15b 02184

FATHER - FULL NAME
16 Brunet Pamphile

STATE OR COUNTRY OF BIRTH (If not in US, name country)
17 Haiti

MOTHER - NAME (GIVEN) (MAIDEN)
18 Eliameno Sainilus

STATE OR COUNTRY OF BIRTH (If not in US, name country)
19 Haiti

INFORMANT'S NAME
20 Widlene Cesar

MAILING ADDRESS - NO. & ST., CITY/TOWN, STATE, ZIP CODE
21 11960 N. E. 16th Avenue, Miami, FL 33161

RELATIONSHIP
22 Sister

23 METHOD OF IMMEDIATE DISPOSITION
☐ BURIAL ☐ CREMATION
☐ ENTOMBMENT ☑ REMOVAL FROM STATE
☐ DONATION ☐ OTH, SPEC.

FUNERAL SERVICE LICENSEE OR OTHER DESIGNEE
24 James A. Whalen Jr.

LICENSE #
43114

PLACE OF DISPOSITION (Name of Cemetery, Crematory or other)
Duplante Cemetery

LOCATION (City/Town, State)
Fermathe, Haiti

DATE OF DISPOSITION (Mo., Day, Yr.)
26a March 31, 2005

NAME AND ADDRESS OF FACILITY OR OTHER DESIGNEE
28a/b Cartwright Funeral Home, 419 No. Main Street, Randolph, MA 02368

29 PART I - Enter the diseases, injuries, or complications that caused the death. Do not use only the mode of dying, such as cardiac or respiratory arrest, shock or heart failure. List only one cause on each line (a through d). PRINT OR TYPE LEGIBLY.

| | | Approximate Interval Between Onset and Death |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) | a Lymphoma   . DUE TO (OR AS A CONSEQUENCE OF) | Years |
| Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (disease or injury that initiated events resulting in death) LAST | b   . DUE TO (OR AS A CONSEQUENCE OF) | |
| | c   . DUE TO (OR AS A CONSEQUENCE OF) | |
| | d | |

PART II - Other significant conditions contributing to death but not resulting in underlying cause given in Part I.

WAS AUTOPSY PERFORMED? (Yes or No)
No

WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? (Yes or No)

30 MED. EXAM. NOTIFIED? (Yes or No)
No

34 MANNER OF DEATH
☑ NATURAL ☐ HOMICIDE ☐ COULD NOT BE DETERMINED
☐ ACCIDENT ☐ SUICIDE ☐ PENDING INVESTIGATION

DATE OF INJURY (Mo., Day, Yr.)
35a

TIME OF INJURY
35b

INJURY AT WORK (Yes or No)
35c

DESCRIBE HOW INJURY OCCURRED
35d

PLACE OF INJURY (At home, farm, street, factory, office bldg., etc.) Specify
35e

LOCATION - No. & St., City/Town, State)
35f

Pronouncement of Death
Form (R-302) on File: ☑

35a To the best of my knowledge, death occurred at the time, date, and place and due to the cause(s) stated. (Signature and Title)

DATE SIGNED (Mo., Day, Yr.)
35b March 24, 2005

HOUR OF DEATH
35c Ziio P M

37a On the basis of examination and/or investigation in my opinion death occurred at the time, date, and place and due to the cause(s) stated. (Signature and Title)

DATE SIGNED (Mo., Day, Yr.)
37b

HOUR OF DEATH
37c M

35d NAME OF ATTENDING PHYSICIAN IF NOT CERTIFIER

37d NAME AND ADDRESS OF CERTIFYING PHYSICIAN OR MEDICAL EXAMINER (Type or Print)

PRONOUNCED DEAD (Mo., Day, Yr.)
37e

PRONOUNCED DEAD (Hr)
37f M

38 Arthur Bregoli, Jr MD 400 Washington St Braintree MA 02184

LICENSE NO. OF CERTIFIER
39 77050

WAS THERE A PRONOUNCEMENT FORM? (Yes or No)
40a Yes

IF YES, DATE PRONOUNCED
40b March 23, 2005

IF YES, TIME PRONOUNCED
40c 9:20 P M

40d NAME OF PRONOUNCER
Kathryn Brown

TITLE
☑ R.N. ☐ P.A.

DATE BURIAL PERMIT ISSUED
March 27, 2005

SIGNATURE OF BURIAL AGENT
41 Richard T. Morin

RECEIVED IN THE CITY/TOWN OF
WEYMOUTH

CLERK'S SIGNATURE

DATE OF RECORD
43 MAR 25 2005

PERMANENT
BLACK INK ONLY
R-301-01

I, FRANKLIN FRYER, THE UNDERSIGNED, HEREBY CERTIFY, THAT I HOLD THE OFFICE OF TOWN CLERK OF THE TOWN OF WEYMOUTH IN THE COUNTY OF NORFOLK, AND COMMONWEALTH OF MASSACHUSETTS; THAT THE RECORDS OF BIRTHS, MARRIAGES, AND DEATHS ARE IN MY CUSTODY AND THAT THE ABOVE IS A TRUE COPY FROM THE RECORDS, AS CERTIFIED BY ME.

WITNESS MY HAND AND THE SEAL OF THE TOWN OF WEYMOUTH

MAR 25 2005
DATE

Franklin Fryer
FRANKLIN FRYER, TOWN CLERK

# Exhibit C

Home > Compensate Employees > Administer Base Benefits > Use > **Life and AD/D Benefits**    New Window

| Elections | Beneficiaries |

Pamphile,Joseph                    Employee              **ID:** 003473890      **Empl Rcd#:**    0

**Plan Type**                                          Find | View 1      First ⌐ 1-8 of

Benefit Plan    Life
Type:

**Coverage**                                           Find | View 1      First ⌐ ⌐ 1-5 of 5

Coverage Begin Date:    03/24/2005       **Effective Date:**       03/27/2005

Benefit Plan:

**Dependent/Beneficiaries**                            Find | View All    First ⌐ 1 of 1 ⌐

| *ID | Name | Relationship | Smoker | Percent of Benefit | Flat Amount | Excess | Contingent |
|-----|------|--------------|--------|--------------------|-------------|--------|------------|
| 🔍 |  |  |  |  |  | ⌐ | ⌐ | + |

Total Primary Percent:
Total Contingent Percent:

Coverage Begin Date:    (03/10/2005)     **Effective Date:**       03/10/2005

Benefit Plan:          BSL                 Basic Life Ins Under Age 65

**Dependent/Beneficiaries**                            Find | View 3      First ⌐ 1-4 of 4

| *ID | Name | Relationship | Smoker | Percent of Benefit | Flat Amount | Excess | Contingent |
|-----|------|--------------|--------|--------------------|-------------|--------|------------|
| 02 🔍 | Pamphile,Beverly | Child | ⌐ | 25 |  | ⌐ | ⌐ | N |
| 06 🔍 | Pamphile,Sonia | Other | ⌐ | 25 |  | ⌐ | ⌐ | N |
| 07 🔍 | Phanor,Chantel | Other | ⌐ | 25 |  | ⌐ | ⌐ | N |
| 08 🔍 | Cesar,Widlene | Other | ⌐ | 25 |  | ⌐ | ⌐ | N |

Total Primary Percent:    100
Total Contingent Percent:

Coverage Begin Date:    (11/12/2004)     **Effective Date:**       11/12/2004

Benefit Plan:          BSL                 Basic Life Ins Under Age 65

**Dependent/Beneficiaries**                            Find | View 3      First ⌐ 1-4 of 4

| *ID | Name | Relationship | Smoker | Percent of Benefit | Flat Amount | Excess | Contingent |
|-----|------|--------------|--------|--------------------|-------------|--------|------------|
| 02 🔍 | Pamphile,Beverly | Child | ⌐ | 15 |  | ⌐ | ⌐ | N |
| 03 🔍 | Pamphile,Judy | Child | ⌐ | 25 |  | ⌐ | ⌐ | N |
| 04 🔍 | Pamphile,Jeffrey | Child | ⌐ | 45 |  | ⌐ | ⌐ | N |
| 05 🔍 | Pamphile,Brunel | Child | ⌐ | 15 |  | ⌐ | ⌐ | N |

04/20/2005 11:38 FAX 617 724 2266                    ☑002

Total Contingent Percent:

| | | | |
|---|---|---|---|
| Coverage Begin Date: | 01/26/2002 | Effective Date: | 01/26/2002 |
| Benefit Plan: | BSL | Basic Life Ins Under Age 65 | |

**Dependent/Beneficiaries**                                    Find | View All     First ◄ 1 of 1 ►

| *ID | Name | Smoker | Percent of Benefit | Flat Amount | Excess | Contingent | |
|---|---|---|---|---|---|---|---|
| 🔍 | | | | | | | ⊞ |

Total Primary Percent:

Total Contingent Percent:

---

Benefit Plan Type:   Supplemental Life

**Coverage**                                                  Find | View 1      First ◄ 1-2 of 2 ►

| | | | |
|---|---|---|---|
| Coverage Begin Date: | 03/10/2005 | Effective Date: | 03/10/2005 |
| Benefit Plan: | SUL5X | Employee Supplemental Life 5X | |

**Dependent/Beneficiaries**                                    Find | View 3     First ◄ 1-4 of 4 ►

| *ID | Name | Smoker | Percent of Benefit | Flat Amount | Excess | Contingent | |
|---|---|---|---|---|---|---|---|
| 02 🔍 | Pamphile,Beverly | Child | | 25 | | | | N |
| 06 🔍 | Pamphile,Sonia | Other | | 25 | | | | N |
| 07 🔍 | Phanor,Chentel | Other | | 25 | | | | N |
| 08 🔍 | Cesar,Widlene | Other | | 25 | | | | N |

Total Primary Percent:   100

Total Contingent Percent:

---

| | | | |
|---|---|---|---|
| Coverage Begin Date: | 01/26/2002 | Effective Date: | 01/26/2002 |
| Benefit Plan: | SUL5X | Employee Supplemental Life 5X | |

**Dependent/Beneficiaries**                                    Find | View All     First ◄ 1 of 1 ►

| *ID | Name | Smoker | Percent of Benefit | Flat Amount | Excess | Contingent | |
|---|---|---|---|---|---|---|---|
| 🔍 | | | | | | | ⊞ |

Total Primary Percent:

Total Contingent Percent:

---

Benefit Plan   AD/D

```
SEARCH KEY: 3473890                   SEARCH TYPE: E
      NAME  PAMPHILE, JOSEPH              UNIT NO  347 38 90
         GBC  0       GBC DATE  01 03 1989 COMPANY NO  07 WEEKLY
         STATUS  01      STD HRS    40.00      BUDGET  0010


    BASIC EMPLOYEE LIFE      BASIC EMPLOYEE AD&D   CASH BALANCE RET PLAN
1: PAMPHILE,RUTH
2: PAMPHILE,BEVERLY
   CODE: 2 DATE: 07 01 1996 CODE:  DATE:        CODE:  DATE:


    OPTIONAL EMPLOYEE LIFE    OPTIONAL EMPLOYEE AD&D
1:
2:
   CODE:  DATE:           CODE:  DATE:


              TRANSACTION DATE 12 12 2001  USER ID  IS2
MSG:                         PF7  - BASIC & OPT LIFE/ADD SELECTION
                             PF8  - CHOICE PAY/PARTNERS MATCH
                             PF9  - BASIC & OPT LIFE/ADD SELECTION
PF2 - UNIT NUMBER            PF10 - BENEFITS MENU
PF3 - NAME                   PF12 - ALL-SCREEN MAIN MENU
PF4 - SOC SEC NO                                   => _____
```

# Exhibit D



**PARTNERS.**
HEALTHCARE SYSTEM

### Beneficiary Change Form

## SECTION I - EMPLOYEE INFORMATION

Employee Name  _Joseph PH JANJI PHILAI_

Please *PRINT* legibly

Today's Date  _3-30-05_

Unit/Emp.ID Number:  _3473890_

Marital Status:
Single ☐ Married ☐ Divorced ☐
Widowed ☐ Separated ☑

Signature:

**Please check all programs that you wish this beneficiary designation to cover:**
Contact your TSA vendor for a form to designate beneficiaries for your voluntary contributions or for Partners matching account.

|  | Core | Optional |
|---|---|---|
| Group Term Life Insurance | | |
| AD&D Insurance | | |
| Cash Balance Retirement Plan | | |

**You *must* complete Section III on back of this form if you are married and have designated a beneficiary other than your spouse for the retirement plan. Your spouse must consent to this designation.**

## SECTION II - DESIGNATION OF BENEFICIARY

Beneficiary Code _2_

**Primary Beneficiary**

| Name | Address | (See below) Soc. Sec. # |
|---|---|---|
| Chantal Manur | 1757 Washington St Brantree La 0184 | |

**Contingent Beneficiary(ies)**

| Name | Address | Soc. Sec. # |
|---|---|---|
| Widlene Cesar | 1460 NE 16th Ave. Apt 101, Miami, Fla 3361 | |

Beneficiary Codes: 1 = one beneficiary; 2 = primary if living, otherwise contingent; 3 = equally to survivors; 4 = primary with children as contingent; 5 = other

In the event of your death, payment will be based on the most current designation on file with Human Resources. This designation will remain in effect until changed by you in writing or as required by the provisions of the plan. Please keep a copy of this form for your records.

**If the back of this form is not completed, we will be unable to honor a designation other than your spouse for your cash balance retirement plan.**

# Exhibit E

Detach Here and Return to the Insured's Group Employer

**FOR GROUP POLICYHOLDER USE ONLY**

| Group Number | 28518 | Employer | Partners Healthcare |
|---|---|---|---|

# Beneficiary Claim Form

**PLEASE RETURN THIS BENEFICIARY CLAIM FORM TOGETHER WITH AN OFFICIAL CERTIFIED COPY OF THE DEATH CERTIFICATE TO THE INSURED'S GROUP EMPLOYER.**

## Section 1. Claimant/Beneficiary Information

**Please type or print legibly. Name and address as stated will appear on checks.**

Name  Chantal   L   Phanor
First   Middle Initial   Last

Sex: ○ Male  ● Female

Address  1751 Washington St   #6
Street   Apartment No.

Home Phone  (781) 848-6012

Braintree   Mass   02184
City   State   Zip

Daytime Phone  (617) 861-7682

Beneficiary's Social Security Number or Taxpayer Identification ████████

Date of Birth ████████
Month   Day   Year

I have not been notified by the Internal Revenue Service that I am subject to backup withholding as a result of failure to report all interest or dividends, or I am exempt. *Cross out this statement if you have been so notified.*

In what capacity are you making this claim?  ● Beneficiary  ○ Executor  ○ Trustee  ● Other: Friend

Claimant's Relationship to the Insured:  ○ Spouse  ○ Child  ○ Parent  ● Other: _____

## Section 2. Information about the Insured (the Deceased)

Name  Joseph   Pamphile
First   Middle Initial   Last

## Section 3. Signature and Certification

I certify, under penalty of perjury, that the Social Security Number or other Taxpayer Identification Number and Claimants Backup Withholding status information in Section 1 is correct. I understand that my signature may be used for signature verification for my Control Plus Account and other purposes.

Signature  *Chantal L Phanor*
(Sign as you would a check. Signature may be used for check verification.)

Date  3-28-05

It is a crime to knowingly, with intent to defraud, file a statement of claim containing any materially false or misleading information, or to conceal any material fact. Untrue or misleading statements may subject persons to criminal prosecution and civil penalties.

| For Use By UniCare Only | | | | |
|---|---|---|---|---|
| Examiner | Claim # | Date Approved/ Denied | Branch | Total-Benefit and Interest |
|  |  |  |  |  |

Return to:

**UNICARE Life & Health Insurance Co. 11S-2**
1350 Main Street
Sringfield, MA 01103-1630
1-800-552-2137

# Exhibit F

Please deliver to *Cynthia Paretti Lucian*

*Alanna G. Cline*

*300 Market Street*
*Brighton, Massachusetts 02135*
*Telephone 617 783 5997*

## Facsimile Transmittal

Date  4-11-05                Time  11:15

Telecopier#

978-247-6529

Number of Pages Including Cover Sheet  2

Comments: *Please note - e-mailed twice 4/8/05 unsuccessfully! Fr. Joseph Pemphile*

**********************CONFIDENTIALITY NOTICE**************************
The documents accompanying the Fax transmission contains information from the law firm of
Alanna G. Cline which is confidential and privileged. The information is intended to be for the
use of the individual or entity named on this transmission and no other person. I you are not the
intended recipient you may not review or re-transmit the contents.
IF YOU HAVE RECEIVED THIS FAX IN ERROR. PLEASE NOTIFY US BY TELEPHONE
IMMEDIATELY SO THAT WE CAN ARRANGE FOR THE RETRIEVAL OF THE
ORIGINAL DOCUMENTS.

*Law Office of:*

## Alanna G. Cline

300 Market St.

Brighton, Massachusetts 02135

Telephone 617 783 5997

April 8, 2005

To: Unicare

Attn: Cynthia Paralta
@wellpoint.com

Dear Ms. Paralta,

    Take notice that by order of Sean M. Dunphy, Chief Justice of the Family and Probate Court of the Commonwealth of Massachusetts, Mr. Joseph Pamphile was enjoined and restrained from changing any beneficiary on any life insurance. The order, dated January, 2000, applies to all plaintiffs in divorce in this state. Mr. Pamphile was a divorce plaintiff in this state, having filed his complaint in 2001. The purpose of the court's order was to protect life insurance and assets for dependents, such as Mr. Pamphile's wife and children. Mr. Pamphile leaves his wife and four children. The youngest child is four years old, so you can understand how important this issue is.

    Take notice as well that as a result of this Standing Order, Mr. Pamphile lacked the legal authority to effect any such change. To the extent that Partners or Unicare aides, assists, or abets in the transmission of any life insurance proceeds on account of Mr. Pamphile death to any person other than the beneficiary named at the time the order applied (July, 2000), then Unicare and Partners may be deemed his agents, and may be deemed responsible for any loss associated by Mrs. Pamphile.

    We will appreciate your prompt efforts to stop any payment in transmission. If there is any doubt as to who is entitled to life insurance proceeds, we are glad to have the matter submitted to the court for determination. In that event, Unicare and Partners will avoid and avert any liability exposure to Mr. Pamphile's wife and children.

    Thank you for your prompt attention.

-1-

# Exhibit G

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNICARE LIFE & HEALTH INSURANCE COMPANY<br>　　　　　Plaintiff-Stakeholder,<br>v.<br><br>CHANTAL PHANOR, RUTH PAMPHILE, BEVERLY PAMPHILE, SONIA PAMPHILE, WIDLENE CESAR, JUDY PAMPHILE, JEFFREY PAMPHILE, BRUNEL PAMPHILE and CARTWRIGHT FUNERAL HOME<br>　　　　　Defendants. | Civil Action No.  05 - 11355 JLT |

### AFFIDAVIT OF DAVID B. CREVIER, ESQ.

I, David B. Crevier, depose and state as follows:

1.    I am a partner at the law firm of Crevier & Ryan, LLP and I specialize in the areas of insurance and employee benefits law.  My hourly rate is $250.00.

2.    Katherine R. Parsons is an associate at the law firm of Crevier & Ryan, LLP and she specializes in the areas of insurance and employee benefits law.  Attorney Parsons' hourly rate is $180.00.

3.    Jennifer Goncalves is a paralegal at the law firm of Crevier & Ryan, LLP.  Ms. Goncalves' hourly rate is $95.00.

4.    Crevier & Ryan, LLP represents the disinterested stakeholder, UniCare Life & Health Insurance Company ("UniCare").

5.    The hourly rates of myself, Attorney Parsons and Ms. Goncalves are fair and reasonable given the respective experience and expertise.

6.  Copies of the legal bills in this matter, redacted as to confidential matters, are attached

    hereto.  As set forth therein, the total fees and expenses billed through January 5, 2006,

    were $7,223.44.

7.  Since January 5, 2006 UniCare has incurred $2,520.00 (14 hours at $180.00) in fees for the

    paperwork for the payment of Cartwright Funeral Home in accordance with the Stipulation

    of Judgment, the drafting of its Opposition to the Pamphiles' Motion to Remand and its

    Motion To Deposit Funds, Dismiss Unicare And Award Fees And Costs And Unicare's

    Request For The Appointment Of A Guardian Ad Litem For The Minor Defendants.

8.  The total fees and expenditures incurred by UniCare are thus $9,743.44 to date.


         Signed under the penalties of perjury, this 30th day of January, 2006.


                                             /s/David B. Crevier
                                             David B. Crevier