UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

Civil Action 05-11355 JLT

_____

UNICARE LIFE & HEALTH INSURANCE CO.
    Plaintiff-Stakeholder

v.

CHANTAL PHANOR, RUTH PAMPHILE,
BEVERLY PAMPHILE, SONIA PAMPHILE,
WIDLENE CESAR, JUDY PAMPHILE,
JEFFREY PAMPHILE, BRUNEL PAMPHILE
AND CARTWRIGHT FUNERAL HOME
    Defendants

_____


CONCISE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION OF
PAMPHILE WIDOW'S AND PAMPHILE CHILDREN'S MOTION  FOR SUMMARY
JUDGMENT

1.    Ruth and Joseph Pamphile were married in Boston on March 8, 1984. *Aff. of Ruth Pamphile par. 2*

2.    They had four children: Beverly, born 3/2/0/84, Judy, born 2/2/86, Jeffrey, born 5/25/88, and Brunel, born 6/22/00. *Aff. of Ruth Pamphile par. 3.*

3.    Mr and Mrs. Pamphile separated in May, 2001. *Aff. Ruth Pamphile par. 4.* Mr. Pamphile filed for divorce in the Suffolk County Probate and Family Court Division of the Trial Court of Massachusetts on November 1, 2001, when an automatic restraining order issued against Mr.

1

Pamphile, *Ex. 2*. Mr. Pamphile died on March 23, 2005, before any trial, settlement, or divorce. *Ex. 12.*

4. Throughout their marriage, Mrs. Pamphile worked full time as nursing aide at the St. Elizabeth's Hospital in Brighton, MA. After she and her husband separated, she continued *per diem* part time due to increased child care needs with the birth of their youngest son. She has just recently resumed a full-time schedule. *Aff. Ruth Pamphile par 5.* Mr. Pamphile worked for Partners Healthcare System, Inc., in accounting, with full benefits including the term life insurance, and supplemental term life insurance, which are the subject of this litigation. That coverage was his only known life insurance. *Id., par. 19.*

5. Never during the course of divorce proceedings did Mr. Pamphile move to be relieved of any part of the Automatic Restraining Order. *Id., par. 6.*

6. Mr. Pamphile changed his beneficiary designation once in 2004 to his children. A later request dated March 10, 2005, was made to change beneficiaries to one child, two sisters, and his girlfriend. A change of beneficiary form was completed on March 20, 2005 changing the beneficiary to his girlfriend if she survived him, and otherwise to one sister. However, at no time did Mr. Pamphile ever disclose to his wife any change of beneficiaries of his life insurance. *Exs. 10, 11, 13, 14.*

7. The Pamphile's older daughter, Beverly, was accepted and admitted to Tufts University after graduating from Newton Country Day School. During divorce proceedings, and due to her parents' disputes, her education at Tufts was compromised and interrupted. While she has taken some courses elsewhere, she has been unable to return to Tufts as yet. *Id., par. 7.*

8. The Pamphile's second daughter, Judy, graduated from Beaver Country Day School. She

attends the University of Massachusetts in Amherst, MA. *Id., par. 8.*

9. The Pamphile's third child, Jeffrey, has graduated Beaver Country Day School and attends the University of Massachusetts in Amherst, MA. *Id., par.9.*

10. The Pamphile's youngest child, Brunel, has just started school. He also attends an age-appropriate program at the New England Conservatory. *Id., par. 10.*

11. The oldest child now works full-time, and is trying to pursue out-of-state options for her continued education. The two middle children work part-time, and also expend time and energy for the care of their younger brother, and for the upkeep and maintenance of their home, as does the oldest child when she is local. *Id., par. 11.*

12. Mr. and Mrs. Pamphile each made substantial financial contributions and expenditures towards their children's education, and Mrs. Pamphile endeavor to continue to do so within her limited means. *Id., par. 12.*

13. At death, Mr. Pamphile left no known estate to administer beyond his car and personal items. His wife has been appointed as his voluntary personal representative. *Id., par. 13; Ex. 3.*

14. Between May, 2001 and January 22, 2002, Mr. Pamphile personally paid out about $6,000 towards the children's current education expenses, including tuition and books, and about $1000 more towards their clothing and a bed, all from a refinancing of the family's home; and funds were also spent on necessary repairs and maintenance as well as credit card payments and payoffs, with the lion's share of the remainder spent for Mr. Pamphile new life and his attorney. *Ex. 4; Affidavit of Ruth Pamphile par. 14..*

15. Due to fear about Husband's response, Wife sought no direct child support order, and relied on her husband's voluntary payments and contributions, her income, the children's part-

time earnings, and (unreliable) rental income from the rental units (as reported on the parties' joint tax returns, before depreciation, net rents totaled $2000-$3000 a year ). *Id., par. 15.*

16.     During their separation through the present, Mrs. Pamphile continued her *per diem* nursing aide job, and began regularly taking courses at Bunker Hill Community College in hopes of completing a college education and a nursing degree.   Mr. Pamphile was the primary breadwinner, earning around $680 a week, while Mrs. Pamphile was the primary homemaker, earning about $210 weekly. *Id., par. 16.*

17.     Mr. Pamphile lived alone in his own apartment until shortly before his death, when he lost his apartment and moved in to his girlfriend's apartment.  (His divorce complaint gave his girlfriend's Braintree address as his own at the time, but his family was only aware of his location in Randolph. *Id., par. 16; Affidavit of Jeffrey Pamphile par. 2; Affidavit of Judy Pamphile, par. 3.*

18.     Mr. Pamphile was understood to enjoy good health until well into divorce proceedings, when he was diagnosed with T-cell Lymphoma, a form of lymphoma that is understood to be transmitted by intimate contact including birth and sexual activity, and may be harbored for decades, based on information.  Therefore, there is an issue about whether his widow and children are at risk and will need medical monitoring and follow-up.  Mrs. Pamphile suffers from diabetes, and has been recently informed of immune system issues. *Affidavit of Ruth Pamphile, par. 18.*

19.     As an employee of Partners HealthCare Systems, Inc.  Mr. Pamphile had life insurance coverage under Group Policy No. GI 28518 with Unicare Life & Health Insurance Company. His life insurance coverage renewed regularly from and after July 1, 1996, *Ex. 2.*  Until at least

2004, his named beneficiary was his Wife, Ruth Pamphile.  Then, he changed beneficiaries three times: on November 12, 2004,  March 10, 2005, and again on March 20, 2005, naming his girlfriend as the beneficiary. *Exs. 10, 11, 13,14*.

20.    When the Complaint for Divorce was filed, it was subject to *Prob. Ct. Supp. 411*, *Ex. 4*. Under the state court's standing order, Mr. Pamphile was enjoined from changing the beneficiaries of any life insurance benefits.

21.    From July 1, 1996 through sometime in November, 2004, Ruth Pamphile was the primary beneficiary, *Ex. 2,3*.  Beverly Pamphile (elder daughter) was the contingent beneficiary.

22.    As of sometime in November, 2004, the children of Joseph and Ruth Pamphile were named (unequal) beneficiaries.  At the time, Beverly was born on March 20, 1984.  She was a 20 year old dependant adult child pursuing college.   The next child, Judy, was born on February 2, 1986.  She, too, was an adult dependent child, still in High School.  Jeffrey, born May 25, 1988, remained a (16 year old) an unemancipated minor,  Brunel was a four year old, born 6/22/00. Both Mr. and Mrs. Pamphile, and their four children, remained subject to *M.G.L. c. 208 s. 28*.

23.    Around March 10, 2005, Unicare received a handwritten note authorizing a third party to change Mr. Pamphile's life insurance beneficiaries to his sisters, Sonia Pamphile and Widlene Pamphile, his eldest daughter, Beverly Pamphile, and his friend, Chantal Phanor.  *Ex. 11*.  It does not appear to have been written by Mr. Pamphile, himself.  It does appear to have been signed by Mr. Pamphile, and to have been witnessed by two witnesses, one on March 10, 2005, and one on March 16, 2005.

24.    The original March 10th memo, as signed, did not specify how the beneficiaries were to take benefits in relationship to each other, *Exs. 2, 3*.

25.     On March 10, 2005, before Mr. Pamphile's death, a Human Resources benefits specialist sent an e-mail to one Andrew Sogolow, questioning how benefits were intended to be distributed between the beneficiaries, *Ex. 11*.  March 10, 2005, a handwritten memo was sent, superimposed upon the e mail found at *Ex. 11* That purported to direct distribution as between the four beneficiaries identified.

26.     The handwritten note is initialed by another third party - "dj." It directs distribution to be "split equally by (4) Life Insurance only..."

27.     On its face, the distribution direction on *Ex. 11* was transmitted by the sender, apparently based upon information from another third party, one Paul Chaney.

28.     In the handwritten beneficiary list, the decedent's elder daughter's name has a check mark next to it.  The name of his sister, Sonia, is underlined.  There is no definition given to the check mark or the underscore.

29.     By preprinted form dated March 20, 2005, another change of beneficiary direction purports to change the life insurance beneficiary, survivor benefit beneficiary, and accidental disability and death beneficiary, all to Chantal Phanor, with Widlene Cesar the contingent beneficiary.  The first line requires printing of the employee's name.  It appears "Joseph Papamhilai" or some such spelling.  It alleges marital separation, not divorce.  It does appear to be signed by the decedent, Joseph Pamphile.  Unicare records recite that Mr. Pamphile personally came to a benefits office to complete this change.

30.     Joseph Pamphile died on March 23, 2005 in a nursing home.  *Ex. 9*.  At the time, he remained married.  Three children remained dependents, and one remained eligible for resumption of dependency under state law, *M.G.L. c. 208 s. 28*.

31. Due to continued and severe grief affliction, Beverly Pamphile has not be asked to complete an affidavit at this time. *Affidavit of Ruth Pamphile par. 7; Affidavit of Jeffrey Pamphile par. 3-6.*

32. For years, the decedent had been dedicated to fostering and paying for his children's better education, including Beaver Country Day School, Newton Country Day School, Tufts, and University of Massachusetts. He voluntarily contributed tuition, book, an supply payments, and his both saw that he contributed as he could, and expected he would continue to do so because of his commitment to their educations. *Affidavit of Judy Pamphile, par. 3-6.*

33. Jeffrey and Judy Pamphile visited their father at Brigham and Women's Hospital four times during his last hospitalization there, hearing him but not being able to see him the first time, and then seeing him personally three times. Through the next two visits, he and his children hugged, kissed, and shared a close and warm time, but he appeared to have an hallucination about his own deceased mother, appeared delirious, mumbled in Creole, and also carried on in an infantile manner, appearing very weak. With their visit on Sunday, he seemed to be much more himself, having rallied, and was to be discharged the following day, although his son had hoped he would stay in for more dialysis. They looked forward to seeing each other soon again, but there were no more visits. *Affidavit of Judith Pamphile, pars. 11-15. Affidavit of Jeffrey Pamphile, pars. 11-15.*

By Counsel,

/s/ Alanna G. Cline

Alanna G. Cline
BBO 086860
300 Market St.
Brighton, MA 02135
617 783 5997

July 31, 2006

7

8

.

9