UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action 05-11355 JLT

UNICARE LIFE & HEALTH INSURANCE CO.
Plaintiff- Stakeholder

v.

CHANTAL PHANOR, RUTH PAMPHILE, BEVERLY PAMPHILE. SONIA
PAMPHILE, WIDLENE CESAR, JUDY PAMPHILE, AND CARTWRIGHT
FUNERAL HOME
Defendants

MEMORANDUM IN OPPOSITION OF PAMPHILE WIDOW'S AND PAMPHILE
CHILDREN'S MOTION FOR SUMMARY JUDGMENT

1.    STANDARD FOR SUMMARY JUDGMENT

In deciding whether to allow a motion for Sumamry Judgment, a court must view

the entire record in the light most hospitable to the party opposing summary judgment.

indulging all reasonable inferences in that party's favor. *Mullin v. Raytheon Co.*, 164

F.3d 696, 698 (1str Cir.1999) quoting *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st

Cir.1990).   A Court need not credit conclusory allegations, improbable inferences and

unsupported speculation. *Bloomfield v. Bernardi Automall Trust*, 170 F.Supp.2d 36, 40

(D.Mass.2001) quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*. 896 F.2d 5. 8 (1st

Cir.1990).

2.    ERISA DOES NOT PERMIT THIS COURT TO ENFORCE
      MASSACHUSETTS' AUTOMATIC RESTRAINING ORDER

Summary Judgment should not be entered against the Defendant. Chantal Phanor.

ERISA does not permit this court to enforce the Massachusetts' Automatic Restraining

Order with regard to the decedent's life insurance policy as a Qualified Domestic Relations Order. The life insurance proceeds should not be distributed to the decedent's widow based on the automatic restraining order.

The automatic restraining order imposed by the Massachusetts' Probate and Family Court is not distinguished from the precedents cited by the Pamphile wife and children.

ERISA's express pre-emption clause states that the Act "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." *Boggs v. Boggs*, 520 U.S. 841 (1997) citing 29 USC § 1144(a). The *Boggs* court determined that this analysis can be completed by simply asking if the state law conflicts with the provisions of ERISA or operates to frustrate its objectives. *Id.* If this is the case, it is not necessary to continue the evaluation of the language "relates to". *Id.* It has been held by a number of circuits that designating a beneficiary of an ERISA plan has connections with or references to that plan, thereby pre-empting state law. *Sun Life Insurance Company of Canada v. Sullivan*, 206 F.Supp.2d 191, 196 (2002).

The statewide order does not meet the ERISA exceptions requirements under *Boggs v. Boggs*, 520 U.S. 833 (1997) and *Sun Life Asssurance Co. v. Sullivan*, 206 F. Supp.2d 191 (2002). According to the Supreme Court in *Boggs*, ERISA's principal object is to protect plan participants and beneficiaries. *Boggs* at 834. "The Act confers pension plan beneficiary status on a non-participant spouse or dependent only to the extent that a survivor's annuity is required in covered plans. §1055(a), or a "qualified domestic relations order" awards the spouse or the dependent an interest in a participants benefits, §§ 1056(d)(3)(K) and (J)." *Boggs* at 834. These provisions give rise to the

strong implication that other community property claims are not consistent with the statutory scheme. *Id.*

In order to qualify as a qualified domestic relations order (QDRO). ERISA requires that the domestic relations order creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan: is any judgment, decree or order which relates to the provision of child support. alimony payments or marital property rights to a spouse, former spouse, child or other dependant of a participant, and is made pursuant to a State domestic relations law. 29 USC § 1056 (3)(B). In addition the requirements of subparagraphs C and D must be met. 29 USC § 1056 (3)(B). A domestic relations order meets the requirements of subsection (C) only if the order clearly specifies the following: the name and last known mailing address of the participant and the name and mailing address of each alternative payee covered by the order: the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined; the number of payments or period to which such order applies; and each plan to which such order applies. 29 USC § 1056 (3)(C). A domestic relations order meets the requirements of subsection (D) only if the order does not require a plan to provide any type or form of benefit, or any option, not otherwise provided by the plan; does not require the plan to provide increased benefits; and does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order. 29 USC § 1056 (3)(D).

*Sun Life* cites several examples of when various circuits have held an order to be a QDRO. In *Metro Life Insurance Company v. Marsh*, 119 F.3d 415 (2 Cir. 1993), the court held that the divorce agreement was not ambiguous in identifying the plan/life insurance as one that is carried through Metro Life Ins. Co. and maintained at his place of employment. In *Metro Life Ins. Co. v. Wheaton*, 42 F.3d 1080 (7th Cit.1994), the court decided that the agreement was not too ambiguous in identifying the plan/life insurance as "the life insurance which is presently carried through his/her employer."

While it appears that the "ambiguity" standard is not as stringent as the "clearly specify" standard set forth in the statute, the insurance policy contained in the divorce agreement in the case of *Sun Life* did not even meet this less stringent standard. The only identification of an insurance policy in the *Sun Life* agreement was the language "the Husband shall maintain an minimum of One Hundred Fifty Thousand ($150,000.00) dollars of his group life insurance for the wife's benefit. . . so long as his alimony obligation continues to her." *Sun Life* at 197. This court determined that since the decree contained nothing more than the term "group life insurance", it was manifestly insufficient to meet the requirements of the statute no matter how liberally the statute is construed. *Id.*

The order in this case is a statewide restraining order that was entered upon filing a complaint for divorce. The order states the following:

> The following order PROHIBITS either party to a complaint or separate support from:
> (1) Selling, transferring, encumbering, concealing, assigning, removing or in any way disposing of any property, real or personal, belonging to or acquired by, either party, except (a) as required for reasonable expenses of living; (b) in the ordinary and usual course of business; (c) in the ordinary and usual course of investing; (d) for payment of reasonable attorney's

fees and costs in connection with the action: (e) by written agreement of both parties; or (f) by Order of the Court.

(2) Incurring any further debts that would burden the credit of the other party, including but not limited to further borrowing against any credit line secured by the marital residence or unreasonably using credit cards or cash advances against credit or bank cards;

(3) Directly or indirectly causing the other party or the minor child(ren) to be removed from coverage under an existing insurance policy or permitting such coverage to lapse. including medical, dental, life. automobile, and disability insurance. The parties small maintain all insurance coverage in full force and effect.

(Please see exhibit 1, Automatic Restraining Order).

In addition, the restrain order states : "FAILURE TO COMPLY WITH THIS ORDER MAY BE DEEMED CONTEMPT OF COURT." (Please see exhibit A, Automatic Restraining Order).

This restraining order does not meet the requirements as a QDRO under ERISA. 29 USC § 1056 (3)(C) requires that the order must clearly specify the name and last known mailing address of the participant and the name and mailing address of each alternative payee covered by the order, the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee or the manner in which such amount or percentage is to be determined; the number of payments or periods to which such order applies; and each plan to which such order applies.

The Automatic restraining order does not meet these requirements set forth by subsection C. The order is not sufficiently specific to warrant enforcement as a QDRO.

First, the Automatic restraining order does not state the name and mailing address of either any party. The restraining order is a general document provided in all Massachusetts divorce cases. It simply states "Notice to Plaintiff" on its face.

The Pamphile widow and children argue that even though the order does not include identity and contact information, the insurance company's records contained this information. However, the statute does not inquire whether the insurance company includes this information in their records. The query is to whether this information is identified on the order in question. In the Automatic restraining order. this information is not included even insomuch as to identify the parties by name.

Second, the Automatic restraining order does not state the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner to which such amount is to be determined. The order simply states the parties to a divorce are prohibited from directly or indirectly causing the other party or the minor child(ren) to be removed from coverage under an existing insurance policy or permitting such coverage to lapse, including medical, dental, life, automobile, and disability insurance. The parties shall maintain all insurance coverage in full force and effect. Like the divorce agreement in *Sun Life*, this order is insufficient to meet even the less stringent ambiguity standard because it does not name with any specificity the policy in question.

Third, the order does not state with any specificity the number of payments or periods to which such order applies. The order states that it is "in effect until the earliest of the following: (1) the order is modified or dissolved by the court; (2) the order is modified by a written agreement of the parties with court approval; (3) the entry of a judgment of divorce or separate support; (4) the action is dismissed; or (5) by further order of the court. Failure to comply with this order may be deemed a contempt of court." The order merely states an open ended indefinite period running from the date of filing the divorce up and until one of 5 different situations occur.

Fourth, subsection (C) requires the QDRO to identify each plan to which the order applies. The Automatic Restraining order identifies the coverage as: "an existing insurance policy . . . , including medical, dental, life, automobile, and disability insurance. The parties shall maintain all insurance coverage in full force and effect." The Pamphile wife and children suggest that the ambiguity standard be applied as it was it was in the 6th and 7th Circuits. However, even if that ambiguity standard is applied in this case, this Automatic Restraining Order would not survive as a QDRO. In *Sun Life*, the court held that the description "group life insurance was insufficient to identify the insurance no matter how liberally the courts construed the statute. Similarly in this case, the language of the statewide Automatic restraining order does not identify any specific policy; instead, the restraining order uses a general description encompassing any and all types of insurance that may be held by the parties to the divorce. This language in the Automatic restraining order is insufficient to satisfy the requirements to be categorized as a QDRO.

In order to qualify as a QDRO, all portions of subsection C must be met. The Automatic restraining order in this case does not meet any of the elements set forth in subsection 3. The Automatic Restraining order cannot qualify as a QDRO. Accordingly, Summary Judgment cannot be entered against the defendant, Chantal Phanor on the basis that the Automatic Restraining order qualifies as a QDRO and not pre-empted by ERISA.

In addition, the wife and children argue that as set out by the order, were Mr. Pamphile to die before the dissolution of the marriage, life insurance that then existed for the benefit of his wife and children, was then to be paid out to them, and to them alone. The order specifically addresses on its face that failure to comply with the order may

result in a contempt a court. No where on the order is it stated that non-compliance with the order would result in specific performance of any of the terms of the order, including a change in the beneficiary of the life insurance policy.

Summary Judgment against Ms. Phanor is not appropriate on this basis, as the Automatic Restraining order does not meet the requirements set forth in 29 USC § 1056 (3)(C) and (D).

3.    THE ORDER IN QUESTION IS NOT SPECIFICALLY DIRECTED TOWARDS THE INSURANCE INDUSTRY

Under 29 U.S.C. s. 1144(B)(2) (a), a statewide statute may meet the requirements to be saved from preemption as a law which regulates insurance under ERISA. In order to qualify, two requirements must be met.

> First, the state law must be specifically directed toward entities engaged in insurance. Second. . . the state law must substantially affect the risk pooling arrangement between the insurer and the insured. *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003).

These laws must be specifically directed toward the insurance industry. *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 329 (2003). Laws of general application that have some bearers on insurers do not qualify. Id. 29 U.S.C. s. 1144(B)(2) (a) saves laws that regulate insurance, not insurers. *Id.*

In this case, the Pamphile Wife and Children argue that the statewide restraining order regulates insurance because it is directed at all existing life insurance policy products provided for, or sold to, marital litigants. Thus, they reason, the order is clearly directed to entities engaged in insurance.

This is not the case. The automatic restraining order is directed to the parties to a divorce. The plaintiff and the defendant are each provided a copy. At no time is the

order ever directed at the insurance industry. The order states on its face "the following automatic restraining order shall apply to both parties to a complaint for divorce or separate support. This automatic restraining order shall be effective with regard to the plaintiff upon the filing of the complaint by the plaintiff or the plaintiff's counsel and with regard to the defendant upon service of the summons and complaint or any other acceptance of service by defendant." The order is directed solely at the plaintiff and defendant to a divorce. In addition, the order is not limited to insurance. The language states that the parties are prohibited from: "Directly or indirectly changing the beneficiary of any life insurance policy, pension or retirement plan, or pension or retirement investment account. . . ." (Please See Exhibit 1, Automatic Restraining Order). The order does not seek to regulate the insurance industry. Instead, it seeks to regulate the marital litigation conduct of marital litigants. This order is not directed at someone who engages in insurance; instead it is directed at individuals engaging in divorce who may have insurance.

The order is not intended to focus its attention solely on the insurance, as in the very same subsection, the language encompasses life insurance policy, pension or retirement plan, and pension or retirement account. The statewide order does not seek to regulate the insurance industry, but rather is in place to regulate the conduct of marital litigants regarding marital assets until a divorce is finalized. The order is not specially directed at the insurance industry. The commonsense, everyday understanding is that the purpose of this order is to regulate how marital property is distributed pending a divorce. Insurance is only one of many categories addressed on the order..

The second requirement to be saved as a law that regulates insurance is that the law must affect the risk pooling arrangement of the insurer and the insured. In *Kentucky Ass'n of Health Plans, Inc.*, the laws substantially affected the risk pooling arrangement between the insurer and the insured by altering the scope of permissible bargains between insurers and insureds. *Id* at 330. In *Kentucky*, the insureds were no longer able to seek insurance from a closed network of health care providers in exchange for a lower premium. The prohibition in this case substantially affected the type of risk pooling arrangements that insureds may offer.

In the case at hand, the state mandated restraining order does not affect the risk pooling arrangement between the insureds and the insurer. The state mandated restraining order cannot substantially effect the risk pool, as it would only apply to a minute number of factual circumstances. First, in order to effect the pool, the owner of the plan must be in the process of divorce, must have a Federal ERISA Insurance Plan, must change the beneficiary of the plan, and must die. The fact that this can only apply to a very minute number of individuals reflects that it is not conceivable that this will substantially effect the risk pool. The Restraining order requires that the parties to marital litigation do not change the beneficiary to an existing life insurance policy. This does not affect the risk pooling arrangement between the insurer and the insureds.

The defendant merely makes bald assertions that this directly effects the risk pool. This has not been proven, and no evidence has been shown at all that restraining marital litigants from reducing or changing the beneficiaries substantially effects the risk pool.

The statewide restraining order does not meet the requirements to be saved as an insurance regulation, and thus can not pre-empt ERISA on this basis.

4.     AS A MATTER OF EQUITY, A CONSTRUCTIVE TRUST SHOULD NOT BE IMPOSED FOR THE BENEFIT OF THE DECEDENT'S WIFE AND CHILDREN.

A Constructive Trust should not be applied for the benefit of the decedent's wife and children as a matter of equity. In the event that ERISA precludes the state law, the Pamphile wife and children suggest that life insurance benefits should be subjected to a Constructive trust for the benefit of the Pamphile children once the proceeds were distributed to the beneficiary.

The sixth circuit held that an injunction entered by the domestic relations court did not comply with the requirements of Section 1056(d)(3)(C), where the Michigan court order did not provide any of the required information set forth under section 1056. *Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672 (2000). Because the beneficiary designation in this case complied with the requirements in the plan documents, the administrator was obliged to pay the insurance proceeds to the named beneficiaries. *Id.* at 678. In this case, Howell argued that since the deceased violated the Michigan domestic relations order, his wrongdoings entitled her to the equitable remedy of a constructive trust under the ERISA plan proceeds. *Id.* The sixth circuit adopted reasoning from the tenth circuit that once the benefits of the ERISA employee benefit plan have been distributed according to the plan documents, ERISA does not preempt the imposition of a constructive trust on those benefits. *Id.* The sixth circuit held that once the benefits have been released to the properly designated beneficiaries, the district court has the discretion to impose a constructive trust upon those benefits in accordance with applicable state law if equity so requires. *Id.*

The First Circuit has not ruled on this issue. Accordingly, there is no binding precedent to determine that a constructive trust should be applied if equity so requires.

The Pamphile wife and children indicate that it is well established under Massachusetts law that a Constructive Trust would be applied by the state court. However, they fail to cite to any case law that addresses the situation of a Restraining Order. Instead, the Pamphile Wife and Children rely on the on case of *Hurlbot v. Hurlbot*, 40 Mass. App.Ct. 521, 665 N.E.2d 1018 (1996). In *Hurlbot*, the deceased was already divorced from his first wife. In the course of the divorce from the first wife, the deceased executed a separation agreement where the deceased agreed to pay the first wife a lump sum upon his death. Following the divorce, he changed the beneficiary of his life insurance policy to his second wife. In this case, the court found that there is no dispute that a spouse who has been removed as a beneficiary of a life insurance policy in violation of the terms of the separation agreement is entitled to recover from the proceeds. *Id.*

Under Massachusetts Law, a court will declare a party a constructive trustee of property for the benefit of another if he acquired the property through fraud, mistake, breach of duty, or in other circumstances indicating that he would be unjustly enriched. *Foster v. Hurley*, 444 Mass. 157. 167, 826 N.E.2d 719 (2005) citing *Fortin v. Roman Catholic Bishop of Worcester*, 416 Mass. 781, 789, 625 N.E.2d 1352(1994). A constructive trust is inappropriate where there is no fiduciary duty and no fraud. *Carpenter v. Suffolk Franklin Sav. Bank*. 370 Mass. 314, 327, 346 N.E.2d 892 (1976).

In the case of *Foster v. Hurley*, 61 Mass.App.Ct. 414, 810 N.E.2d 1266 (2004), the court also addressed the situation where a separation agreement that was incorporated

into a divorce decree, where both parties were to maintain a reciprocal obligation to provide life insurance naming the other party as beneficiary. Again, in the Appeals Court the former spouse was upheld as the beneficiary due to the terms of the separation agreement. However, the Supreme Judicial Court found that in the absence of specific guidelines in the separation agreement as to the intentions of the parties regarding after acquired policies and in the absence of any evidence that the deceased intended to use the policy to meet the obligations under the separation agreement but was dissuaded to do so by his second spouse, the first wife had no legal or equitable rights to the proceeds of the insurance policy. *Foster v. Hurley*, 444 Mass. 157, 169, 826 N.E.2d 719 (2005).

A Constructive trust is not appropriate in this situation. The Pamphile wife and children did not address whether there is evidence of fraud, mistake, breach of duty, or any other circumstances indicating that Defendant Phanor would be unjustly enriched. Defendant Phanor maintains that there is no that there is no evidence of fraud, mistake, breach of duty, or any other circumstances indicating that Defendant Phanor would be unjustly enriched. Further, because there is no fraud and no fiduciary relationship between Defendant Phanor and the Pamphile wife and children, according to *Carpenter*, a constructive trust would not be the appropriate remedy.

In the case at bar, the facts are different from *Hurlbot* and *Foster*. In this case, there was no separation agreement. Instead, there was an automatic restraining order prohibiting the deceased from changing the beneficiary of any life insurance policy. The order on its face states that failure to comply with the order of the court may be deemed a contempt of the court. The order does not further indicate what should be done in the event that a party does not comply with the order.

The Massachusetts courts have not addressed what should be done in a situation similar to the case at hand. In fact, prior to the use of the Automatic Restraining Order, the Massachusetts Supreme Judicial Court indicated that a previous temporary restraining order was insufficient to prevent the change in beneficiary. *Gleed v. Noon*, 415 Mass. 498, 614 N.E.2d 676 (1993). The Massachusetts courts have not determined the proper remedy in the immediate situation.

It would be improper for a Constructive trust to be imposed following the beneficiary designation as a matter of equity on the basis of Massachusetts law, when the state law has not determined how a particular situation should be handled.

Further, the issue of whether a Constructive trust should be applied is a question of material fact, namely whether the conditions here meet the requirements of fraud, mistake, breach of duty, or other circumstances indicating that Defendant Phanor would be unjustly enriched. The Pamphile Wife and Children did not address any of these requirements for a Constructive Trust. There is a question of material fact as to whether any of these requirements in fact apply. Accordingly, Summary Judgment should not be granted based on the Constructive Trust argument.

5.    FEDERAL COMMON LAW IS STILL DEVELOPING

Federal common law is still developing as to ERISA. In the context of developing common law, when ERISA is silent on an issue, courts, as a general rule, may "turn to state law" for guidance when they initially  fashion federal common law rules to govern ERISA suits, so long as the state law is consistent with ERISA and its underlying policies. *Metropolitan Life Insurance v. Flinkstrom*, 303 F.Supp.2d 34, 41 (2004).

In *Flinkstrom*, the court addressed the issue of whether a spouse may waive his rights to a benefit under an ERISA regulated plan through a statement in a marital agreement that is incorporated into a divorce judgment. *Id.* The court adopted the majority approach in this case to allow a voluntary waiver of interest so long as that waiver in unambiguous. *Id.*

As reasoning for adopting the majority approach, the court reasoned that one of ERISA's purposes is to facilitate uniform. uncomplicated administration of benefit plans. Federal courts are charged with creating federal common law rules to govern ERISA and the creation of these rules provides the needed uniformity. *Id.*

In this case, the issue is of substantial individual interest and rights rather than of ministerial function. Enforcement of the statewide order would require the plan administrators not only to perform a practice of thoroughly investigating the marital status of a participant employee, but to remain current as to the marital status of each and every employee. In the instant case, a married individual is permitted to change a beneficiary on the policy freely at any time. However, in the event a divorce complaint is filed, only then is the married individual restricted from changing the beneficiary. Enforcement of the statewide order would place a large burden on the part of the plan administrator forcing the administrator to not only investigate the marital status of each and every participant, but to also remain current as to each and every participant to ensure that the marital status does not change. An investigation of the marital status of a participant employee would not be simply a one time check; instead it would place an ongoing burden on the plan administrator to remain current as to the marital status of each and every participant.

In the instant case, the employee's beneficiary change form stated that he was separated. However, the form did not specifically ask whether a divorce had been filed. It is not uncommon for married individuals to separate prior to filing a divorce complaint for any varied length of time. This did not provide notice to the plan administrator of any potential Restraining Order preventing a change in beneficiary. The terms suggested by the Pamphile wife and children, namely fully investigating the marital status of a participant employee, and remaining current as to the marital status on each such participant employee, would substantially increase the burden on a benefits administrator.

Additionally, the Federal Courts can turn to the state courts for guidance when they initially fashion federal common law rules to govern ERISA suits, so long as the state law is consistent with ERISA and its underlying policies. In the case at bar, the Massachusetts courts have not addressed what should be done in this situation. Prior to the use of the Automatic Restraining Order, the Massachusetts Supreme Judicial Court indicated that a previous temporary restraining order was insufficient to prevent the change in beneficiary. *Gleed v. Noon*, 415 Mass. 498, 614 N.E.2d 676 (1993). The Massachusetts courts have not determined the proper remedy in the immediate situation.

6. WHETHER THE TWO LATER BENEFICIARY DESIGNATION FORMS SHOULD BE SET ASIDE BASED ON THE DECEDENT'S INCOMPETENCY AND INCAPACITY IS A QUESTION OF MATERIAL FACT THAT CANNOT BE DETERMINED ON SUMMARY JUDGMENT.

Whether the two later beneficiary designation forms should be set aside based on the decedent's incompetency and incapacity is a question of material fact that cannot be determined on summary judgment.

A matter is not ripe for summary judgment if a question of material fact exists. Here, the Pamphile wife and children argue that based on Mr. Pamphile's medical records prior to his discharge on March 15, 2005 that his subsequent admittance on March 21, 2006, indicate that his mental state from March 16, 2005 through March 20, 2005 would be insufficient to meet the competency required to change the beneficiary of his life insurance policy.

A question of material fact exits as to the mental state and competency from March 16, 2005 through March 20, 2005. Mr. Pamphile changed his beneficiary first on March 10, 2005 and again on March 20, 2005. On March 10, 2005, Mr. Pamphile was in fact an inpatient at Brigham and Women's Hospital. However, he was released from care on March 15, 2005, and was placed into the care of Ms. Phanor. There is no medical documentation as to his mental state during the period from March 15, 2005 after he was released, until he lapsed into a coma on March 21, 2005. The change of beneficiary took place on March 20, 2005. At best, the Pamphile wife and children are making an assumption that Mr. Pamphile's mental heath declined over this period of time. In fact, they were not in contact with him at all during this time period. In addition, there is no medical documentation to suggest when his mental state was after his discharge.

At the time of his discharge, Mr. Pamphile "did seem to have improved mental status.... Given, however, the apparent clearing of his mental status after steroid administration . . . he will be discharged on maintenance dose of Decadron." (Please see Exhibit 2, Medical Records).

More so, defendant, Chantal Phanor was the caretaker of Mr. Pamphile during this period of time. She and she alone is able provide a first hand account of his mental

state and competence from March 15, 2006 when Mr. Pamphile was discharged until

March 21, 2005 when he was admitted into the nursing home. She has stated in the form

of an affidavit that during the period of time from March 15, 2005 until March 21, 2005,

Mr. Pamphile was alert, oriented, and speaking. (Please see exhibit C, Affidavit of

Chantal Phanor). In addition

Since only Defendant, Chantal Phanor has first hand knowledge of Mr.

Pamphile's mental state and competence during this period, at the very least, a genuine

issue of material fact exists. Accordingly, summary judgment is not appropriate on the

issue as to whether Mr. Pamphile's mental state prohibited a change in the designation of

the beneficiary.

<div style="margin-left: 40%">

Respectfully submitted,
Defendant, Chantal Phanor,
By her attorney,

*/s/ Steven C. Goldwyn /s/*

Steven C. Goldwyn, Esq,
BBO # 561438
Altman & Altman, LLP
675 Massachusetts Avenue
Cambridge, MA 02139
(617) 492-3000

</div>

## Commonwealth of Massachusetts
## The Trial Court
## Probate and Family Court Department

### Supplemental Probate Court Rule 411. Automatic Restraining Order

#### Notice to Plaintiff

(a) The following automatic restraining order shall apply to both parties to a complaint for divorce or separate support. This automatic restraining order shall be effective with regard to the plaintiff upon the filing of the complaint by the plaintiff or the plaintiff's counsel and with regard to the defendant upon service of the summons and complaint or any other acceptance of service by the defendant.

After service of the complaint for divorce or separate support, on two (2) days' notice to the other party or on such shorter notice as the court may prescribe, a party may appear without thereby submitting his person to the jurisdiction of the court, and move to modify or dissolve the automatic restraining order and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require.

This order is in effect until the earliest of the following: (1)the order is modified or dissolved by the court; (2)the order is modified by a written agreement of the parties with court approval; (3)the entry of a judgment of divorce or separate support; (4)the action is dismissed; or (5)by further order of the court. **FAILURE TO COMPLY WITH THIS ORDER MAY BE DEEMED A CONTEMPT OF COURT.**

The following order PROHIBITS either party to a complaint for divorce or separate support from:

(1) Selling, transferring, encumbering, concealing, assigning, removing or in any way disposing of any property, real or personal, belonging to or acquired by, either party, except: (a) as required for reasonable expenses of living; (b) in the ordinary and usual course of business; (c) in the ordinary and usual course of investing; (d) for payment of reasonable attorney's fees and costs in connection with the action; (e) by written agreement of both parties; or (f) by Order of the Court.

(2) Incurring any further debts that would burden the credit of the other party, including but not limited to further borrowing against any credit line secured by the marital residence or unreasonably using credit cards or cash advances against credit or bank cards;

(3) Directly or indirectly changing the beneficiary of any life insurance policy, pension or retirement plan, or pension or retirement investment account, except with the written consent of the other party or by Order of the Court.

(4) Directly or indirectly causing the other party or the minor child(ren) to be removed from coverage under an existing insurance policy or permitting such coverage to lapse, including medical, dental, life, automobile, and disability insurance. The parties shall maintain all insurance coverage in full force and effect.

(b) The provisions contained in the new summons for divorce or separate support must be served on the defendant, except if personal service is not made as provided in Rule 4 and service is made by publication, said notice shall include a statement that an automatic restraining order has been issued pursuant to this rule. The provisions of this automatic restraining order need not be reprinted in said public notice.

Date Rule Effective: January 1, 2000.

Chief Justice

CJ-D 1108 (01/00)

# COLONIAL NURSING CENTER

## Admission Form

Resident Name: **PAMPHILE**                **JOSEPH**

Resident #: __7967__    Level of Care: __1__            Payment Source: **Insurance**

Admission date: __03/21/2005__    Time: __624P__    Unit: _____    Room #: _____    Bed #: _____    Room Rate: _____ .00

Address: **1751 WASHINGTON ST., #6, BRAINTREE, MA 02184**

Phone #: **781-848-5012**    DOB: **01/26/1958**    Age: __47__    Place of birth: _____    Gender: __M__

Religion: **CATHOLIC**    Lifetime occupation: _____    Social Secur. #: **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**

Race: **BLACK**    Primary Language: **ENGLISH**    Maiden Name: _____

Marital Status: **Never Married**  *now Separated*    Citizenship: _____

---

Notify in Emergency: Name: **THANOR, CHANTELLE**    Phone: H **781-848-5012**    W **617-861-7652**

Address: _____    Rel: **FRIEND**

Power of Att'y: Yes ☐  No ☐    Doc. on File: Yes ☐  No ☐ _____

Name: _____    Phone: H _____    W _____

Address: _____

Billing Info To: Name: **PAMPHILE, JOSEPH**    Phone: H **781-848-5012**    W _____

Address: **1751 WASHINGTON ST., #6, BRAINTREE, MA 02104**

Other Family/Friends:

Name: _____    Phone: H _____    W _____    Rel: _____

Address: _____

Name: _____    Phone: H _____    W _____    Rel: _____

Address: _____

---

Advance Directives: Yes ☐  No ☐    Doc. on File: Yes ☐  No ☐ _____

Health Care Agent: Yes ☐  No ☐    Doc. on File: Yes ☐  No ☐ _____

Name: _____    Phone: H _____    W _____

Referring Physician: _____    Phone: _____    Fax: _____

Attending Physician: **BREGOLI, ARTHUR**    Phone: **781-849-7330**    Fax: **781-356-7599**

Alternate Physician: **ANSWERING SERVICE**    Phone: _____    Fax: _____

Consulting Physician: **PRIOR AUTHORIZATION NEEDED**    Phone: _____    Fax: _____

Primary Care Physician: _____    Phone: _____    Fax: _____

Podiatrist: **PRIOR AUTHORIZATION NEEDED**    Phone: _____    Fax: _____

Dentist: **PRIOR AUTHORIZATION NEEDED**    Phone: _____    Fax: _____

Ophthalmologist: **PRIOR AUTHORIZATION NEEDED**    Phone: _____    Fax: _____

Pharmacy: **OMNICARE**    Phone: _____    Fax: **508-835-2368**

---

| Admitting Dx | Code | Admitting Dx | Code |
|---|---|---|---|
| T-CELL LYMPHOMA | 202.10 | ACUTE RENAL FAILURE NOS | 584.9 |
| SEC MALIG NEO NERVE NEC | 198.4 | | |
| ENCEPHALOPATHY NOS | 348.39 | | |

Hospitals and Extended Care Facilities:

| | | |
|---|---|---|
| Brigham and Women's Hosp. 75 Francis Street, Boston, MA | adm: 03/07/05 | disch: 03/15/05 |
| | adm: | disch: |
| | adm: | disch: |
| | adm: | disch: |

---

Medicare #: __- - - - - - - - - -__    A ☐    B ☐    Medicaid #: __N__

Insurance Company: **BLUE CROSS**    Policy #: **XXH99393292X**    Group#/Code _____

Insurance Company: _____    Policy #: _____    Group#/Code _____

Insurance Company: _____    Policy #: _____    Group#/Code _____

---

Hospital Pref: Name: **Brigham and Women's Hosp.**    Phone: **617-732-5500**

Funeral Home Pref.: Name: **CARTWRIGHT FUNERAL**    Phone: **767-4116**

Pre-paid Amount: __7971__    Arrangements made? Yes ☐  No ☑ _____

---

Discharge date: **03/23/2005**    Discharge time: __205P__    AM ☐  PM ☐    Discharged by: _____

Disch. to: **FUNERAL HOME**    Phone: _____

Discharge Reason: _____    LOS: __2 Days__    Expired ☐

Discharge Dx/Problem: **T-CELL LYMPHOMA**

**BRIGHAM AND WOMEN'S HOSPITAL**
A Teaching Affiliate of Harvard Medical School
75 Francis Street, Boston, Massachusetts 02115
**main #:(617)732-5500**

PATIENT: PAMPHILE,JOSEPH
DESTINATION:
LOC.:                 DFCI #

PATIENT: PAMPHILE,JOSEPH

### PATIENT CARE REFERRAL FORM

Med. Record#  086-31-64-0C

### NURSING INSTRUCTIONS (Page 2)

**Patient Care Plan:**
Mr Pamphile is a 47 year old patient who was admitted on March 7, 2005 for mental status changes and acute renal failure. He has nonhodgkins lymphoma and a lumbar puncture was performed on this admission and showed metastisis to his spine. An EEG was done and showed diffuse encephalopathy.
ROS
Neuro. Pt. is currently A+Ox3, but has been A+Ox0 - only responsive to pain.
Resp: Pt lung sounds are rhoncherous thourghout and dim at the bases. The pt does not complain of any SOB or DOE. His breathing is even and unlabored. His O2 sat is 96-100% on room air.
Cardiac: He has not complained of any chest pain during this admission. He is in normal sinus rhythm with his heart rate ranging 50-80. His BP has been elevated 140-190/70-90. His temp is 97-98 with a max of 100.7.
GI: Abd soft, nontender, nondistended. + BS x4. No c/o N/V/D. Pt. had not had a BM in 6 days and was given lactulose QID and he had 6 large BMs on 3/13/05. He has a diet of clear liquids.
GU: He has a foley catheter putting out quantity sufficeint clear yellow urine.
Mobility: Pt. was seen by PT and ambulates with a steady gait with a walker.
Code Status: Pt. is a DNR/DNI. Health care proxy is Pt's girlfriend Chantal.
Psychosocial: Pt. has a wife who he has a restraining order against because of physical abuse and threatening to kill him. Pt's girlfriend Chantal also has a restraining order against his wife. He has a very supportive group of family and friends who visit everyday.
Plan: Ultimately Pt. and his girlfriend have expressed interest in going back to Haiti for the patient to die.

**Nurse's signature: WICKMAN,ROSEMARY  Date:03/15/05 ph# (617)732-7910**

---

MAR-21-2005  17:29           781 843 7358           95%                P.02

Case 1:05-cv-11355-JLT    Document 50-3    Filed 09/22/2006    Page 3 of 24
Case 1:05-cv-11355-JLT    Document 43    Filed 08/01/2006    Page 3 of 24
Ex. 9 p. 3

BRIGHAM AND WOMEN'S HOSPITAL
A Teaching Affiliate of Harvard Medical School
75 Francis Street, Boston, Massachusetts 02115
main #:(617)732-5500

PATIENT: PAMPHILE,JOSEPH
DESTINATION:
LOC.:          DFCI #

PATIENT: PAMPHILE,JOSEPH

## PATIENT CARE REFERRAL FORM

Med. Record# 086-31-64-0

### Care Coordination: (Page 3)

Mr Pamphile is a pleasant 47 yo man who wasa dmitted to BWH w
lymphoma and diagnosed to have spine mets.Pt lives in Braintree with
his GF chantell who is his HCP and her 2 kids ages 16 and 9 yo..Pt has
a restraining order for his ex wife as there is evidence of abuse.Pt
will be outpt hospice at present but may be admitted to inpt SNF if
his care becomes overwhelming for Chantelle.He eventually plans to
return to Haiti if possible. Will also need Socail services for outpt
family support.His insurance is BC-Partners plus.Thank you.

Care Coordinator's signature: KIRIAKIDIS,ANNA  Date:03/15/05

### Rehabilitation Services
### Physical Therapy Evaluation

Phone:(617)732-5301

Evaluation type: Referral Discharge

### Diagnosis
Lymphoma, Hypercalcemia

### Orders/Precautions
PT consult: Please assess re: Ability to travel home today.

HPI: 47 y/o male with lymphoma with dizziness and rhythmic shaking of
head, arms and legs, c/o room spinning. Presented to ED on 3/7/05 with
mental status changes.

PMH: PCP, HBV, lymphoma, tumor lysis syndrome, renal insufficiency,
portal HTN.

PSH: Lymphnode biopsy.

### Social/Environmental
Pt lives with his girlfriend in Braintree, MA with 5 steps with a
railing to enter his one level home.

### Prior Functional Level
Independent without device.

### Current Functional Level
Bed Mobility
Roll side to side:  Not applicable
Supine to sit:  Stand by
Comments:HOB elevated.
*********************
3/15/05 Pt up in chair prior to treatment.
Sit to supine:  Not applicable
Comments:Pt up in chair after treatment.
Transfers
Sit to stand:  Independent                          Continued
Transfers
Stand to sit:  Independent
Comments:3/15/05 With cane.                         Continued
Transfers
Bed to chair:  Not applicable                       Continued
Gait
Gait
Level:  Stand by
Comments:3/15/05 Ambulated using cane x 100 feet.  Continued
Gait
Stairs:  Stand by
Comments:Not yet ready for stairs.

BRIGHAM AND WOMEN'S HOSPITAL                  PATIENT: PAMPHILE,JOSEPH
A Teaching Affiliate of Harvard Medical School     DESTINATION:
75 Francis Street, Boston, Massachusetts 02115     LOC.:          DFCI #
main #:(617)732-5500

PATIENT: PAMPHILE,JOSEPH        PATIENT CARE REFERRAL FORM        Med. Record#  086-31-64-0

Rehabilitation Services
Physical Therapy Evaluation

Phone:(617)732-5301                                        Continued

Discharge Plan/Recommendations
    Pt is a 47 y/o male with Lymphoma admitted to BWH on 3/7/05 with
    mental status changes. Pt will benefit from PT while in-house to
    attain above stated goals. Will re-assess as needed.
    ***************************************************************
    3/15/05 Pt to be discharged later today to home. Pt near independent
    with all mobility and will have home hospice services at home.

Modality/Equipment
    at BWH, Loaner walker.
    ******************************
    3/15/05 Issued cane to pt.

Evaluation time
    Angela M. Powers PT,  3/13/05/updated 3/15/05 Angela M. Powers, PT 33699, 15 minutes.


    Physical Therapist's signature:  POWERS,ANGELA M.  Date:03/15/05

## PHYSICIAN PROGRESS NOTES

| Family Name | First Name | Attending Physician | Room No. | Adm. No. |
|---|---|---|---|---|
| *[illegible]* | Joseph | *[illegible]* | | |

| Date | Notes Should be Signed by Physician |
|---|---|

3/22/- — 47 yr BM with a PMH of PCP, HCV, lymphoma, Renal failure and *[illegible]* lysis syndrome. Admit to B&W Hospital with a change in *[illegible]* status. Found to have diffuse malignant lymphoma. He was transferred to *[illegible]* rm for comfort care.

No ROS — unresponsive

Family hx —

Social hx. *[illegible]*

PE — See H&P

*[illegible]* Lymphoma  Comfort care
PCP  DDx 4 staff
HBV

*[signature]*

3/23/05 S: Asked to see pt who is terminally ill. He is comatose *[illegible]* Cheyne Stokes respirations. There is no response but his respirations *[illegible]*. He is currently being medicated *[illegible]* MS 4mg = q 1°

O — Comatose — labored breathing — Temp 97°
Heart - 88 reg    100/60    *[illegible]*
Chest — RR 12 → 16 — occas *[illegible]*
*[illegible]*

## DISCHARGE SUMMARY

Hosp No.: _7967_

Last Name: _Pumphrey (Joseph)_    Date & Time of Admission: _3/21/05  6²⁴ P_

Attending Physician: _Dr. Bregoli_    Date & Time of Discharge: _3/23/05  205P_

ADMITTING DIAGNOSIS: _T-Cell Lymphoma  Sec Malig. Neo Nerve,_
_Encephalopathy, Acute Renal Failure_

BRIEF HISTORY OF NURSING HOME STAY: _Pt alm to G-1 NH_
_for jtbt al cy  He did well_
_Al expd Peacefully_

CONDITION AT TIME OF DISCHARGE (Physical & Mental): _Pt expired_

DISCHARGED TO: _Cartwright Funeral Home_
_419 No. Main Street,  Randolph   MA 62368_

FINAL DIAGNOSIS: _Lymphoma_    _202.10_

PROGNOSIS: _Pt expd_

Date: _3/23/05_    Signed: _____    M.D

WHF-NUR-141    1/94

# ADMISSION ASSESSMENT

| Section A | | IDENTIFICATION AND BACKGROUND ASSESSMENT |
|---|---|---|
| 1. | Resident Name | Last: _PAMPHILE_     First: _JOSEPH_     MI: |
| | Medical Record # | Record # |
| 2. | Physician | Name: _DR ARTHUR BREHOL_ |
| 3. | Date of Admission | _3 / 31 / 05_     Time _6:45pm_     Sex: ✓ Male<br>DOB _1 / 26 / 58_     Age: _47_     ___ Female |
| 4. | Source of Information<br><br>Primary Language | a. Resident          b. Family<br>0 ___ No          0 ___ No    2 ___ No Family<br>1 ___ Yes          1. ✓ Yes<br>___ English          ___ Other (specify) ___ |
| 5. | Admitted From<br><br>AB2 | 0 ✓ Private home or apt.  3. ___ TCU<br>1. ___ Nursing facility    4 ___ Rehab hosp<br>2 ___ Acute care hosp    5. ___ Other<br>_Followed by SS Hospice_ |
| 6. | Accompanied by | 0. ___ Family          2. ___ Self<br>1 ___ Friend          3 ✓ Other   Name _Hospice Nurse_ |
| 7. | Transported Via | 0. ✓ Stretcher   1 ___ Ambulatory   2 ___ Wheelchair |
| 8. | Orientation<br><br>Check indicates education provided and resident/family understood information | (Check all that apply) _applied to family_<br>a ✓ Call Light    b. ✓ Telephone   c ✓ Roommate/Staff   d ✓ TV<br>e ✓ Visiting Hours   f ✓ Laundry    g ✓ Lighting    h. ✓ Bed Control<br>i. ✓ Unit Set Up   j ✓ Daily Schedule    k ✓ Activities<br>l ✓ Bathroom    m ___ None of the Above |
| 9. | Advance Care Directives<br><br>A10 | DNR ✓ (Yes) ___ No    Health Care Proxy ✓ (Yes) ___ No<br>Comfort Care ✓ (Yes) ___ No  Organ/Tissue Donor ___ Yes ___ No Other _DNH_ |
| 10. | Reason for admission to facility, in resident's own words<br><br>Resident's perceptions and expectations | What do you feel you need to accomplish during your stay? _Comfort care_<br>Pre-admission functional level ___ same ___ better ___ worse<br>Problems with Safety Awareness  ( )Yes  ( )None Identified at This Time |
| 11. | Vital Signs | a. _97_ Temp   c. B/P _110/64_   lying ___ sitting ___ standing<br>b. _64_ Apical Pulse Rate   d. _20_ Respirations<br>_O₂ Sat 96% RA_ |
| 12. | Height and Weight<br>K2 A&R | (Record actual height in inches and weight in pounds) Must be weighed and measured in the facility)<br>a. ___ Height   b. ___ Weight |
| 13. | Vaccine Information | History of receiving flu vaccine Yes ___ No ___ Date if known ___<br>History of receiving pneumonia vaccine Yes ___ No ___ Date if known ___<br>History of receiving tetanus vaccine Yes ___ No ___ Date if known ___<br>(   ) _unknown per family_ |

**WHF-NUR-102A**                                                                 6 04

Case 1:05-cv-11355-JLT   Document 50-3   Filed 09/22/2006   Page 8 of 24
Case 1:05-cv-11355-JLT   Document 43   Filed 08/01/2006   Page 8 of 24
Ex. 9 p. 8

Resident Name.

| Section C | ORAL ASSESSMENT | Special Needs |
|---|---|---|
| ✓ LYMPH NODES: No enlargement | __ Enlarged __ Tender __ Swollen | |
| __ LIPS: Smooth. pink. moist | ✓ Dry __ Chapped __ Red __ Bleeding<br>__ Coated | |
| ✓ TONGUE<br>Normal roughness. pink and moist | __ Red __ Bleeding __ Coated __ Ulcerations | Last Dental Exam_____<br>Reason for Exam |
| ✓ GUMS:<br>Pink, small indentations; firm, smooth and pink under artificial teeth | __ Red __ Swollen __ Bleeding __ Ulcerations | |
| ✓ TEETH (Natural):<br>No decayed or broken teeth/roots | __ No Teeth __ Loose Teeth<br>__ Missing or Broken Teeth<br>__ Plaque build-up __ Food build-up | |
| __ TEETH (Artificial)<br>Unbroken teeth, worn most of the time | __ None __ Full Upper __ Full Lower<br>__ Partial Upper __ Partial Lower<br>Dentures are worn:<br>__ Usually __ Sometimes __ Rarely __ Never<br>Denture Condition:<br>Upper __ Adequate __ Broken/Missing Teeth<br>Lower: __ Adequate __ Broken/Missing Teeth | |

Number of natural teeth_____ None___
Upper dentures labeled: __Y __N __None   Lower dentures labeled __Y __N __None

Is your mouth comfortable? __Y __N  If no, please explain: _____

Functionally, is the patient-resident able to chew?? __Y __N  With dentures_____ Without dentures ____

Comments: NPO, comfort care, Non-responsive   RN Signature: _____

| Section D | RESPIRATORY ASSESSMENT | |
|---|---|---|
| __ Respirations within normal rate for age, quiet and regular.<br>No rales/wheezes<br><br>Smoking History<br>__ Never Smoked | __ Shortness of breath (caused by?) __ Cough productive ( )Yes ( ) No<br>Color _____ __ Orthopnea __ Hemoptysis __ Pain __ Asthma<br><br>Smoked in Last year Yes_____ No_____ Current Smoker Yes___ No___<br><br>PHYSICAL FINDINGS:<br>Lung sounds: __ Diminished __ Wheezes __ Rales __ Ronchi<br>Other:_____<br><br>#Pillows to sleep___ O2 at___ L/min<br>Trach size type_____ date last changed_____<br>O2 sat___ | |

| Section E | PAIN ASSESSMENT | |
|---|---|---|
| __ Resident denies pain of any kind. Assessor sees no signs of pain demonstrated by resident. | 72 hour Screening Assessment must be initiated on admission | |

3

Resident Name: _Pamphile, Joseph_

---

| Section F | TUBERCULOSIS SCREENING  Have you ever had TB ___ yes ___ no |

Do you currently have _Comfort Care, non-responsive,_

1. Unusual Fatigue ___Yes ___No   4. Persistent Cough (Longer than 2 weeks) ___Yes ___No
2. Weight Loss ___Yes ___No   5. Blood streaked sputum ___Yes ___No
3. Loss of Appetite ___Yes ___No   6. Night sweats ___Yes ___No

Have you ever had a positive TB Test? ___Yes ___No  If yes date and type (PPD)_____ (CXR)_____
Ever had a reaction to a TB Test? ___Yes ___No

If Yes, explain: _____

Ever had a treatment for TB? ___Yes ___No
If Yes, explain (include drugs): _____

Has a family member ever had TB? ___Yes ___No
If Yes, who: _____

---

| Section G | CARDIOVASCULAR ASSESSMENT |

___Cardiovascular.
Apical pulse regular and
rate within range for age.
No dependent edema.
Nailbeds and mucous
membranes pink

**CARDIOVASCULAR**
___Arrhythmia ___Chest Pain ___Hx of HTN ___heart disease
___Ankle Edema. ___L ___R ___Palpitations ___Tachycardia
___Bradycardia ___Pace Maker
Type: _____
Rate. _____
Date Last Checked _____

Hx HTN

**PHYSICAL FINDINGS**
___Numbness ___Tingling ___Weak Pulses ___Absent Pulses
___Jugular Vein Distention
Other

---

| Section H | MENTAL ASSESSMENT |

___ Mental: Alert and
oriented to time, place, and
name. Responds
appropriately
Communication is adequate
for expression of needs.
Short Term and Long Term
Memory intact.

**MENTAL STATUS** (Check all that apply?)

___Alert ___Forgetful ___Lethargic ___Anxious ___Noisy
___Demanding ___Sociable ___Quiet ___Friendly
___Depressed Mood ___Withdrawn ___Diagnosis of MR/MI
___Impaired Long Term Memory Ba2b ___Impaired Short Term Memory
B3a ✓Unresponsive/Comatose B1 ___Unable to Respond to Painful
Stimuli
Disoriented to: ___Time ___Place ___Person
___Behavior Appropriate
___Inappropriate (detrimental to life/comfort of self or others)
___Inappropriate (not a major management problem)
Answers Questions: ___Readily ___Reluctantly ___Inappropriately
Specify any change in orientation in last 30 days_____

_____ Psych
Consult Needed:

---

| Section I | NEUROLOGICAL ASSESSMENT |

___ NEUROLOGICAL
WNL
No numbness.No tingling
No paralysis
No noticeable weakness
Pupils equal and reactive to
light

**NEUROLOGICAL**: (Check all that apply)
___Epilepsy _____Hx of Strokes ✓Pain ___Fainting Spells/Dizziness
___Headaches ___Stroke___Weak Hand Grasps ___Unequal Pupils
___Seizures (How controlled)_____
___Numbness/Tingling (Location)_____
___Speech Problems ___Other

Resident Name:

| Section J | MUSCULOSKELETAL ASSESSMENT | |
|---|---|---|
| __ Musculoskeletal ROM WNL Ambulates independently without device or assistance. No swelling or pain in joints Gait Steady | **MUSCULOSKELETAL** (Check all that apply)<br>__Unsteady Gait  __Pain  __Wound  __Cast/Sling<br>__Fractures/Dislocation __Back Problem __Deformity__Gout<br>__Arthritis/Unstable Joints/Stiffness<br><br>Weight Bearing·          Right  Left<br>　Full          __  __<br>　Partial        __  __<br>　Touchdown      __  __<br>　Non weight bearing  __  __<br><br>Precautions/Restrictions_____<br>Prosthesis/Aides_____<br><br>Extremities:  RU  LU  RL  LL<br>Weakness    __  __  __  __<br>Paralysis    __  __  __  __<br>Contractures  __  __  __  __<br>____Needs assist with bed mobility<br>Locomotion:<br>__Amb. Ad Lib  __Up in Chair __For short time  __For most of day<br>Ambulate with help of  __1 Assist  __2 Assist<br>　__Walker __Cane __Brace<br>About in W/C __Ind __Dep<br>__Wanders, usual distance: _____ | *bed rest bedtherapy 1 off Non-responsive* |
| Section K | NUTRITION ASSESSMENT | |
| __Nutritional WNL Consistently eats >75% Weight WNL Fluid intake>1000 cc/24 hrs. | Diet at home:  ∅ restrictions.<br>Hx Diabetes _____ yes __✓__no<br>Eating habits limited by condition of teeth:  (1) Y N<br>Specify:_____<br>Swallowing· __No difficulty __Some difficulty<br>Chewing· __No difficulty __Some difficulty<br>Feeding Skills·<br>__Feeds self __Assist Needed __Dependent<br><br>Weight Change:<br>__Loss ____Gain  Approximate Amount_____<br>Time Frame:_____<br>Food Dislikes· | |
| Section L | GASTROINTESTINAL ASSESSMENT<br>N/A. | |
| __GI WNL BM at least 2x week Normal color or consistency of stool Continent | __Ostomy _____Type/Size of appliance<br>__Continent __✓__Incontinent<br>__Loss of appetite/taste __Thirst __Nausea/Vomiting<br>__Heartburn __Constipation __Diarrhea<br>Laxative Used:_____<br>__Distention __Abdominal Pain __History of Hepatitis<br><br>Date of last Bowel Movement:_____<br><br>Other:_____ | If incontinent, history of constipation, current use of Narcotics or other constipating drugs, place on Bowel Regulation Program |

5

Resident Name: _Pamphile , Joseph_

| Section M | FALL RISK ASSESSMENT | | | |
|---|---|---|---|---|
| 0-7 Low Risk, 8 or greater high risk. Any resident scoring a 2 on either awareness level or mobility is high risk. Residents having Syncope Fear of Falling Incontinence or an acute illness/infection, delirium or dehydration are automatically considered at high risk | | | | |
| Age | 0. less than 80 | 1. 80 or greater | | (Enter a 0 or 1 for age) |
| Assistive Device in Use: W/C, Walker, Cane | 0. No device needed | 1. Independently uses devices | 2. Requires assistance with device | N/A |
| Awareness Level | 0. Understands and follows directions | 1. Consistently follows simple directions | 2. Does not follow or inconsistently follows directions | 2 |
| Physical Status | 0 Good muscle strength | 1 Specific or general weakness | 2. Paralysis Contractures Amputations | 1 |
| Weight Bearing Status | 0 Full weight bearing | 1 Partial weight bearing | 2 Non-weight bearing | 2 |
| Mobility | 0. Independently ambulates. No history of falls in last 3 months or fx in last 180 days | 1. Ambulates with assist or an unsteady gait. No history of falls in last 3 months or Fx in last 180 days | 2. Does not ambulate or experienced a fall within last 3 months or Fx in last 180 days | 2 |
| Transfer Ability | 0. Independent | 1. Supervised | 2. Assist | 2 |
| Vision | 0 Good | 1. Impaired | 2 Blind | 0 |
| Hearing | 0. Good | 1. Impaired | 2. Deaf | 0 |
| Medications Resident receiving 1 or more of these meds score a 1 | 0. Does not apply | 1.Antihypertensives Cardiotonics Narcotic Analgesics Diuretics Antiemetics Sedative Hypnotics Antipsychotics Antidepressants Antihistamines Anti-Anxiety Eye-Drops Anticonvulsives AntiParkinson Nsaid"s | | 1 (Enter a 0 or 1 for meds) |
| Depression | 0 No active diagnosis | 1. Current diagnosis of depression | | 0 (Enter a 0 or 1 for depression) |
| ADL | 0. Independent | 1. Dependent in 1 ADL | 2. Dependent in 2 ADL | 2 TOTAL SCORE: 12 |

6

Resident Name: *Pamphile, Joseph*

| Section N | NORTON PLUS PRESSURE ULCER SCALE | | | | | Score |
|---|---|---|---|---|---|---|
| Physical Condition | 4. Good | 3. Fair | 2. Poor | 1. Bad | | 1 |
| Mental State | 4. Alert: Aware of person, place, and time | 3. Apathetic | 2. Confused | 1. Stupor | | 1 |
| Activity | 4. Ambulant: | 3. Walks with help: | 2. Chairbound | 1. Bedrest | | 1 |
| Mobility | 4. Full: | 3. Slightly Limited: | 2. Very Limited: | 1. Immobile: | | 2 |
| Incontinent | 4. Not | 3. Occasional: | 2. Usually: | 1. Always | | 1 |
| NORTON SCORE: | | | | | | 6 |
| NORTON PLUS DEDUCTIONS (CHECK IF YES): | | | | | | |
| Diagnosis of Diabetes | | | | | | |
| Diagnosis of Hypertension | | | | | | ✓ |
| Hematocrit (in last 90 days) (M): less than 41% (F): less than 35% | | | | | | |
| Hemoglobin (in last 90 days) (M): less than 14 g/dl (F): less than 12 g/dl | | | | | | |
| Albumin Level (in last 90 days) Less than 3.3 | | | | | | |
| Febrile: greater than 99.6 | | | | | | |
| 5 or more prescription medications | | | | | | |
| Change in Mental Status to Confused/Lethargic Within 24 Hours | | | | | | |
| TOTAL NUMBER OF CHECK MARKS FROM ABOVE: | | | | | | 1 |
| | | | | | NORTON SCALE SCORE: | 6 |
| | | | | | MINUS TOTAL CHECK MARKS FROM ABOVE: | 1 |
| | | | | | TOTAL NORTON PLUS SCORE: | 5 |

| NOTE: | 16 – 20 | No Risk or Low Risk |
|---|---|---|
| | 11 – 15 | Moderate Risk |
| | 10 or Less | High Risk |

NURSE'S SIGNATURE: _____    Date: 3/31/05

Source: Norton, D., McLaren, R. and A.N. Exton-Smith. An Investigation of Geriatric Nursing Problems in Hospitals. 1975

Welch Healthcare & Retirement Group

Patient /Family Education Assessment Record

Joeson Pamphill

| | | | | | | | Patient/Family preferred teaching method: |
|---|---|---|---|---|---|---|---|
| tients readiness to learn (if no, describe reason) | | | | | | | |
| bility to understand written rections | Learner: 1. Resident<br>2. Girlfriend<br>3.<br>4. | | 1. __Y__ ✗<br>2. ✓Y __N<br>3. __Y __N<br>4. __Y __N | | | | __Printed materials<br>✓Explanation<br>__Demonstration<br>__Other |

| | Yes | No | | Yes | No | | Yes | No | Specify for yes |
|---|---|---|---|---|---|---|---|---|---|
| ysical | ✓ | | Age Related | | | Emotional | | | |
| nguage | | | Sensory(visual) | | | Motivation | | | |
| ligious | | | Sensory(Auditory) | | | Financial | | | Coma |
| ..l | | | Cognitive | | ✓ | Other | | | |
| ...e/Title | Kimp Brownrn | | | | | Date 3/24/05 | | | |

| | | | | | | | Patient/Family preferred teaching method: |
|---|---|---|---|---|---|---|---|
| tients readiness to learn (if no, describe reason) | | | | | | | |
| bility to understand written rections | Learner: 1. _____<br>2. _____<br>3. _____<br>4. _____ | | 1. __Y__N<br>2. __Y__N<br>3. __Y__N<br>4. __Y__N | | | | __Printed materials<br>__Explanation<br>__Demonstration<br>__Other |

| | Yes | No | | Yes | No | | Yes | No | Specify for yes |
|---|---|---|---|---|---|---|---|---|---|
| ysical | | | Age Related | | | Emotional | | | |
| nguage | | | Sensory(visual) | | | Motivation | | | |
| ligious | | | Sensory(Auditory) | | | Financial | | | |
| ltural | | | Cognitive | | | Other | | | |
| gnature/Title | | | | | | | Date | | |

# NURSES NOTES

NAME _(Joseph) Benjamin_    ADM. NO. _____    DATE _3/21/05_

| Date | Time | | Sig. |
|------|------|------|------|
| 3/21/05 | 3P-11P | Pt. admitted to CNH PC Rm 247B from Home accompanied by family & Hospice nurse. Hospice recs called to covering MD Dr Dalton - all orders confirmed. PMH includes Non-Hodgkins lymphoma, renal failure, encephalopathy, s/p lumbar puncture, HTN T 97.7, BP 110/48, P 64, R 20, O₂ Sat 96% R/A LSC ⊕ Bowel sounds 4 quads ⊕ 4 BLE edema — see initial nsg Skin assessment. Unresponsive to verbal/tactile stimuli, resting in bed and then suddenly sat upright & attempted to stand, eyes wide, speech ??? restless, med ē MSO4 4mg SC and Phenobarbital 60mg IM for s/x of pain & restlessness ō effect. Plan of care in place c resident, family & friends in visiting. ——— B Brady RN | |
| 3/22 | 11-7 | VS MSO4 Sat 94% RA, AP 73, R 16-112, U 98/50 Unresponsive c ↑ agitation. Cont c comfort measures MSO4 4mg SC ×1 for pain mgmt. Safety ē maintained T 97.7 RNP need, MD updated on residents condition @ 630 AM Bil feet edematous, skin D+I resident DNI this shift. NPO T+R Q2° ——— K. Lee, RN ——— | |
| 3/22/05 | 7-3³⁰ | 9AM VS T 98.8 110/64 76 RRX 94% on R/A Unresponsive to verbal or painful stimuli. No noted labored breathing. Lung sounds clear. Hospice in to see pt. Remained unresponsive entire shift. 2PM T 98.7 118/60 92 18 95% T+R Q2°. Dr. Dugan in to see pt. Cont on comfort care NPO Received on 50 morphine this shift. No void, Foley ??? RN | |

# NURSES NOTES

ADM. NO. _____ DATE _____

| Time | | Sig. |
|------|---|------|
| 3-22-05 | _comfort care cont. absent gag reflex._ | |
| 3-11-05 | _Nurse 70° Treatment very agitated_ | |
| | _TLC to MD re Glad state for Dr. Bregan_ | |
| | _710 give morphine sulfate 4 mg q 1 hour prn._ | |
| | _morphine sulfate given → ↓ resp. effort._ | |
| | _restless + agitation. Family in_ | |
| | _emotional support given. Repositioning_ | |
| | _q ___ hours. mouth care given._ | |
| | _C. Villani RN_ | |
| 3-23 | 11-7 | _Pt. remains unresponsive c̄ labored resp. but_ | |
| | _not rapid. M.S. given S.C. A/O X 5 this shift_ | |
| | _for labored resp. ↑ in secretions noted - Pt._ | |
| | _not swallowing. comfort care - mouth care. C. Reardon RN_ | |
| 3/23 | _Pt unresponsive - medicate q1° c̄ MSO₄ -_ | |
| 7-3 | _Scopolamine patch on. ↓ urine. Pt's_ | |
| | _significant other in @ 1⁵⁵ ____ expired_ | |
| | _@ 2⁰⁵ P. D. Clifford RN_ | |
| 3/23 | _Body released to ____ Undertaker_ | |
| 2⁵⁰ | _Funeral Home _____ | |

# HOSPICE CARE PATH ©

PHASE 2
(VISITS FOR INTERMEDIATE STAGE)

Patient Name: Joseph Pamphile

ID#: 24191

Date: 3/23/05  1050AM

| CARE ELEMENTS | INTERVENTIONS: Use '✓' for complete; 'T' for not done (see 'N/A' as appropriate). | COMMENTS |
|---|---|---|
| CARDIOVASCULAR AND RESPIRATORY | Assess dyspnea ✓ Assess need for oxygen therapy Place in home (as ordered) and educate re: maintenance and safety, give handout and document in medication profile Assess for increased secretions and inability to clear secretions ✓ Teach aspiration precautions ✓ | VS: T ___ HR 80 R/I. R/I. RR 16 BP 90/54 Edema: L 4+ R 4+ Lungs: L Rhonchi R Rhonchi Wearing 2L O2 Scopolamine patch intact Does not appear in any distress @ this time Scopolamine helpful to ↓ resp secretions |
| GI/GU AND NUTRITION/ HYDRATION | Assess for nausea, vomiting, anorexia ___ Assess changes in elimination patterns ___ Instruct on diet requirements for a dying person, decreased desire to eat or drink ___ Assess for dysphagia ___ Assess oral cavity and S/S candidiasis and teach oral care ___ Assess need for Foley catheter ___ Place (as ordered) and give handout ___ Assess for dehydration ___ Assess need for IV therapy and make appropriate referrals ___ | LBM ___ Foley catheter size N/A Fr ___ cc/balloon NPO JO to unresponsive ↓ urine output abdomen distended |
| NEURO | Assess orientation, LOC, confusion, lethargy, hallucinations, wandering ✓ Assess sleeping patterns ___ Assess for S/S seizure activity ___ Teach seizure precautions ___ | unresponsive ∅ agitation noted for several hours |
| ENDO | Assess for signs/symptoms of hypo/hyperglycemia ___ Assess knowledge of diabetic management, and teach per knowledge deficits (give handout): ___ N/A | ___ |
| PAIN AND MEDICATIONS | Assess pain/pain management and instruct on comfort measures ___ Reorder medications as needed ___ Instruct re: changes and update home medication profile ___ Instruct purpose, action, side effects of the following medications: ___ | PAIN 0 1 2 3 4 5 6 7 8 9 10 SCALE Unable to rate pain on scale presently appears to be comfortable Present regimen is morphine 4 mg Subcutaneous Q1° |
| SKIN | Perform wound care (as ordered, add Skin Care Protocol to record, give handout) and teach signs and symptoms of infection ___ Teach to change position frequently and potential for skin breakdown ___ Teach incontinence care ___ Assess IV access site for signs and symptoms of infection ___ N/A | Skin dry warm to touch Intact |
| COPING AND PSYCHOSOCIAL | Assess Patient/Family coping and anxiety ___ Encourage verbalization of fears, anger, sadness and offer emotional support ___ Determine high risk caregivers/family for bereavement follow up ___ Assess respite needs ___ Provide volunteer respite care (as needed) ___ Patient's predominant mood/affect: anxious ✓ lonely ___ regretful ___ tearful ___ angry ___ irritable ___ depressed ___ flat ___ pleasant ___ sad ___ calm ___ other ___ | Patient had visit from the Priest Pt's Case Manager Gray Graham will contact Pt's Primary Care Giver Chantelle to help ē coping ín |

Case 1:05-cv-11355-JLT   Document 50-3   Filed 09/22/2006   Page 17 of 24
Case 1:05-cv-11355-JLT   Document 43   Filed 08/01/2006   Page 17 of 24
Ex. 9 p. 17

# HOSPICE CARE PATH ©

**PHASE 2**
(VISITS FOR INTERMEDIATE STAGE)

Patient Name: Joseph Pamphile

ID#: 24191

Date: 03/22/05

| CARE ELEMENTS | INTERVENTIONS:<br>Use "✓" for complete; "I" for not done and "N/A" as appropriate. | COMMENTS |
|---|---|---|
| CARDIOVASCULAR AND RESPIRATORY | Assess dyspnea ✓<br>Assess need for oxygen therapy ✓<br>Place in home (as ordered) and educate re: maintenance and safety, give handout and document in medication profile N/A<br>Assess for increased secretions and inability to clear secretions ✓<br>Teach aspiration precautions Pt. is NPO | VS:  T 98.8 Aur, HR 80 R/A<br>R/A, RR 10, BP 101/60<br>Edema: L 3+, R 6+<br>Lungs: L ___, R ___<br>Scattered Rhonchi<br>Bilaterally, no known cardiac Hx but pt. has systemic lymphoma with involvement of spleen 6+, urethra and K. [illegible]<br>would watch for rales or [illegible] Breath sounds, use Scopolem, no patch 0.20° PO in and lorazin 0.15 mg SC [illegible] |
| GI/GU AND NUTRITION/ HYDRATION | Assess for nausea, vomiting, anorexia ___ Assess changes in elimination patterns ___ Instruct on diet requirements for a dying person, decreased desire to eat or drink ___<br>Assess for dysphagia ___ Assess oral cavity and S/S candidiasis and teach oral care ___ Assess need for Foley catheter ___ Place (as ordered) and give handout N/A Assess for dehydration ___ Assess need for IV therapy and make appropriate referrals N/A | LBM 3/19 Foley catheter size N/A ___ cc/balloon<br>Pt. pain positive soft, NPO now<br>mouth care given<br>Markedly decreased bowel sounds, Abd. distended, very hard over [illegible] mid abdomen |
| NEURO | Assess orientation, LOC, confusion, lethargy, hallucinations, wandering ___ Assess sleeping patterns ___<br>Assess for S/S seizure activity ✓<br>Teach seizure precautions N/A | Pt. is obtunded at this time, had been having some agitation up home [illegible] renal failure and end of life issues |
| ENDO | Assess for signs/symptoms of hypo/hyperglycemia ___<br>Assess knowledge of diabetic management, and teach per knowledge deficits (give handout): N/A | 5 p.100.5 |
| PAIN AND MEDICATIONS | Assess pain/pain management and instruct on comfort measures ___ Reorder medications as needed ___<br>Instruct re: changes and update home medication profile ___<br>Instruct purpose, action, side effects of the following medications:<br>Pt. is on 2.4 mg MSO4 SC<br>q2° and dosing<br>36-60 SC q2°<br>would cut, this dose and RN's if pt. becomes<br>agitated, would increase to 6 mg 3/10 | PAIN (0) 1 2 3 4 5 6 7 8 9 10<br>SCALE<br>Pt. has not had pain during this decline. Continued sedation is the primary comfort measure at this point. Pt. is no longer able to take PO and will gradually decline. Good sedation level at this time, have consulted with our hospice pharmacist - no contraindications ___ |
| SKIN | Perform wound care (as ordered), add Skin Care Protocol to record, give handout and teach signs and symptoms of infection N/A Teach to change position frequently and potential for skin breakdown ___ Teach incontinence care ✓ Assess IV access site for signs and symptoms of infection N/A | Skin is very dry - lotion being applied - would suggest continue lotions q6° |
| COPING AND PSYCHOSOCIAL | Assess Patient/Family coping and anxiety ___<br>Encourage verbalization of fears, anger, sadness and offer emotional support ___<br>Determine high risk caregivers/family for bereavement follow up ___ Assess respite needs ___<br>Provide volunteer respite care (as needed) N/A<br>Patient's predominant mood/affect:<br>anxious ___ lonely ___ regretful ___ tearful ___<br>angry ___ irritable ___ depressed ___ flat ___<br>pleasant ___ sad ___ calm ___ other ___ | Pt's PCG Chantelle is very pleased and grateful for the admission and care at the hospital. She is tearful [illegible] anticipating of pt's rapid decline |

## SOUTH SHORE VISITING NURSE ASSOCIATION

COMMUNICATION RECORD

NAME: Joseph Pamphile

I.D. #: 24191

Page #_____

03/31/05
7³⁄₁₀ Pt. has been rapidly declining for several days.
He was seen this AL by Gina Tempesta MSW at
home with his PCG Chantell Thomin.
As per phone conversations with pt's Doctor at
Dana Farber DR Rachael Rosovsky, and visit
by myself and Gina Tempesta, pt is affirmed as
a DNR/DNI. This is well documented in the
D/c Summary placed in the chart from BIW Hosp.
We provided a copy of the health care proxy signed
By Joseph Pamphile designating Chantell as
his decision maker.
He is admitted to Colonial NSG facility this
eve. for general inpatient end of life ---
care for comfort and symptom management.
He is experiencing end of life agitation.
This could also be as a result of his acute
Renal failure as well.
                    Greg Graham RN
                    Case manager, Hospice of the
                    South Shore

# HOSPICE CARE PATH ©

PHASE 2
(VISITS FOR INTERMEDIATE STAGE)

Patient Name: _Joseph Pan ph.b_

ID#: _2x191_

Any questions about prior care
please call JR Rachael Rosovsky
@ DANA FARBER 617 632-3899 (3779)

Date: _03/21/05_

| CARE ELEMENTS | INTERVENTIONS: Use '✓' for complete, 'F' for not done and 'N/A' as appropriate. | COMMENTS |
|---|---|---|
| CARDIOVASCULAR AND RESPIRATORY | Assess dyspnea ✓ / Assess need for oxygen therapy ✓ / Place in home (as ordered) and educate re maintenance and safety, give handout and document in medication profile / Assess for increased secretions and inability to clear secretions ✓ / Teach aspiration precautions ✓ | VS: T ___ HR ___ R/I. 62 / R/I. RR 8 BP 110/6 / Edema: L 4+ R S+ / Lungs: L ___ R ___ / Pt resp distress no Rales or Rhonchi / No cardiac hx except for Hypertension / R/I ⊖ Atenolol / Pt has been a body builder recently in the past / Panpiah My Knline |
| GI/GU AND NUTRITION/ HYDRATION | Assess for nausea, vomiting, anorexia ✓ / Assess changes in elimination patterns / Instruct on diet requirements for a dying person, decreased desire to eat or drink ✓ / Assess for dysphagia ✓ / Assess oral cavity and S/S candidiasis and teach oral care ✓ / Assess need for Foley catheter ✓ / Place (as ordered) and give handout / Assess for dehydration ✓ / Assess need for IV therapy and make appropriate referrals N/A | LBM 3/16 Foley catheter size ___ cc/balloon / Very poor po past 3 days, very small voids, bladder not distended / Sly sips of 46.5. Pt is in Renal failure s/p chemo 3 mos ago attempts at IV? plasma unsuccessful |
| NEURO | Assess orientation, LOC, confusion, lethargy, hallucinations, wandering ✓ / Assess sleeping patterns ✓ / Assess for S/S seizure activity ✓ / Teach seizure precautions ✓ | Pt is non verbal picky, tu-clive, occasionally confused / Some unclear at times, unable to stand with safety / Pt needs 2° supervision at times |
| ENDO | Assess for signs/symptoms of hypo/hyperglycemia ✓ / Assess knowledge of diabetic management, and teach per knowledge deficits (give handout): N/A | 5 prob. |
| PAIN AND MEDICATIONS | Assess pain/pain management and instruct on comfort measures ✓ / Reorder medications as needed ✓ / Instruct re: changes and update home medication profile ✓ / Instruct purpose, action, side effects of the following medications: ✓ / Mild agitation not improved / with ativan. / Would suggest changing to MSO4 2-4mg SQ Q2-4 / phenobarb 30-60mg SQ ✓ / Compazine 25mg supp QD / PRN nausea, MS/Ativan/? | PAIN 0 1 2 3 4 5 6 7 8 9 10 SCALE / 1³⁄p given MSO4 5mg c̄ 1mg Ativan / 2³⁄p MSO4 5mg c̄ 1mg Ativan / 4³⁄p MSO4 10mg c̄ 1mg Ativan / 5ᵖ Compazine supp 25mg di nausea |
| SKIN | Perform wound care (as ordered, add Skin Care Protocol to record, give handout) and teach signs and symptoms of infection ✓ / Teach to change position frequently and potential for skin breakdown ✓ / Teach incontinence care ✓ / Assess IV access site for signs and symptoms of infection N/A | Warm very dry / Some redness of arms + legs - lotion applied frequently |
| COPING AND PSYCHOSOCIAL | Assess Patient/Family coping and anxiety ✓ / Encourage verbalization of fears, anger, sadness and offer emotional support ✓ / Determine high risk caregivers/family for bereavement follow up ✓ / Assess respite needs ✓ / Provide volunteer respite care (as needed) ___ / Patient's predominant mood/affect: / anxious ___ lonely ___ regretful ___ tearful ___ / angry ___ irritable ___ depressed ___ flat ___ / pleasant ___ sad ___ calm ___ other ___ | Pt's PCG Nantelly is exhausted / does 24° care at home, Pt not settled at noc, many nights sleeping / Pt is estranged from wife Ruth / Panpiah anxious past Rostaninguish agitation - will get a copy from Daughter & Women's Hospital for Short at ... |

3/23/05

# HOSPICE CARE PATH ©

PHASE 2 *continued*

Patient Name: Joseph Pamphile

ID#: 24191

| CARE ELEMENTS | INTERVENTIONS: Use "✓" for complete; "T" for not done and "N/A" as appropriate. | COMMENTS |
|---|---|---|
| ACTIVITY AND SAFETY | Assess activity level, environment for risk factors and potential for injury ✓ Review hospice protocol, when and how to contact hospice staff ___ Add equipment (as needed and document on Cover Sheet) and teach safe use ___ Assess / teach need for baby monitor N/A Instruct side rails up while in bed ✓ Teach to assist with ambulation and transfers at all times N/A HHA Supervision Pt. satisfied? Y ☐ N ☐ Home situation changed? Y ☐ N ☐ Personal care given? Y ☐ N ☐ Service change? Y ☐ N ☐ Increase ☐ Decrease ☐ | Bedbound ☒ Not Bedbound ☐ pt. will be much safer in nursing home setting where he can have supervision and frequent NSG. assessments |
| TREATMENTS | As ordered N/A IV Care: access type N/A Orders: as per NSG staff & MD | |
| INTERTEAM SERVICES / COMMUNITY REFERRALS | Case conference: MSW ✓, Chaplain ___, Volunteer ___, HHA ___, PT ___, OT ___, SLP ___, CETN ___, Psych RN ___ IV Home Infusion Coordinator ___ Make community referrals as needed ___ | Several consults today with Dorothy Tempesta MSW who has closely followed pt. with me |

| PATIENT OUTCOMES | Met | Not Met | Explain variance code identified in "not met" column. |
|---|---|---|---|
| 1. Pt/Cg verbalizes hospice protocol and when and how to contact hospice staff. | ✓ | | |
| 2. Pt/Cg verbalizes purpose, action, side effects of each medication instructed. | ✓ | | |
| 3. Pt/Cg demonstrates compliance with medication schedule. | ✓ | | |
| 4. Pt verbalizes an acceptable level of pain control. | ✓ | | |
| 5. Pt/Cg verbilizes dietary/hydration needs of the dying person. | ✓ | | |
| 6. Pt maintains activity as tolerated. | ✓ | | |
| 7. Pt/Cg verbalizes / demonstrates that emotional needs are being met. | ✓ | | |
| 8. Pt/Cg verbalizes that support services are meeting expressed needs. | ✓ | | |
| 9. Pt/Cg demonstrates safe use of equipment. | ✓ | | |

If unmet outcomes from previous phases have now been met write phase or outcome numbers:

Plan for next visit: assess comfort level, c/o, Resp. Status
family coping

Physician Contact: Teletha Duffy LPN to contact Dr Dalton for adm. and
Outcome of MD Contact: med. orders cover for Dr Bergoli;
also suggest scopolamine patch for resp. secretions with Levsin 0.125 mg SL q4-6 PRN

Additonal Comments: I will follow closely with you.
I have advised the nurse in charge that Hospice
Nurse(s) are available 24°/day for consult
and I will see pt. here as well, 781-843-0947 –
page me (days) or on call RN

Signature and Title: Greg Graham RN
Date: 03/21/05
Revisit Date: 03/23/05

## SOUTH SHORE VISITING NURSE ASSOCIATION

COMMUNICATION RECORD

NAME: Joseph Pamphile

I.D. #: 24191

Page #_____

03/31/05

7³⁰ Pt. has been rapidly declining for several days.
He was seen this am by Gina Tempesta MSW at
home with his PCA Chantelle Johnson.
As per phone conversations with pt's doctor at
Dana Farber DR Rachael Rosovsky, and visits
by myself and Gina Tempesta, pt is affirmed as
a DNR/DNI. This is well documented in the
D/c Summary placed in the chart from both Hosp.
We provided a copy of the health care proxy signed
By Joseph Pamphile designating Chantelle as
his decision maker.
He is admitted to Colonial NSG facility this
eve for general inpatient end of life
care for comfort and symptom management.
He is experiencing end of life agitation.
This could also be as a result of his acute
Renal failure as well.
　　　　　　　　　— Greg Graham RN
　　　　　　　　　Case Manager Hospice of the
　　　　　　　　　South Shore

Case 1:05-cv-11355-JLT    Document 50-3    Filed 09/22/2006    Page 22 of 24
Case 1:05-cv-11355-JLT    Document 43    Filed 08/01/2006    Page 22 of 24
Ex. 34 p.22

# REPORT OF CONSULTANT

| Family Name | First Name | Middle Name | Adm No |
|---|---|---|---|

| From Attending Physician | To Consultant | Date |
|---|---|---|
|  | REGINA TEMPESTA LICSW | 3/23/05 |

Hospice Social Worker

Report requested regarding ___Josephine Pamphile___  (Regina Tempesta LICSW)

(in lieu of Hospice form)

Signature of attending physician _____

### REPORT

**Findings** MSW visit. SW arriving at 2 PM. Met c̄ Donna Gifford RN and Kathlynn RN to receive report prior to seeing patient. (SO) Chantelle manor in patient's room. Chantelle had talked to pt stated "it's ok to go Joe" held his hand and sat at bedside. While Kathryn-m RN Hospice SW & Chantelle gt were at bedside patient took his last breath and expired. Chantelle wished to clean his body and change his clothing. She has informed Joe's sister in Miami and various friends of his death. She awaits married male friend to arrive being funeral home in Centerville. Hospice was notified of pt's passing at 2:15 PM — report to Tish in office. Time of death was 2:00 PM. Chantelle reviews relationship c̄ Joe and his contacts Ann Maria Ruggiero @ Partners Benefits Dept.

**Diagnosis** Unclear finances fin arrangements already made. Pt had been in touch c̄ lawyer & Bright Dept fin.

**Recommendations** Fired of employment last Friday.

(Recommend) bereavement follow up by Hospice as Chantelle has 16 yo dtr and 9 yo dtr

**Date of consultation** Both close to patient

Signature of Consultant
(Regina Tempesta LICSW)
REGINA TEMPESTA LICSW

SSVNA Hospice
781-843-0947

WHF-NUR-144

THERAPY
RESOURCES
MANAGEMENT, L.L.C.

# INTERDISCIPLINARY REHABILITATION
# SCREENING FORM

RESIDENT NAME: __Pamphile, Joseph__          ROOM # __247__

Reason for Screen:  __✓__ Admit  ____ Readmit  ____ Annual  ____ Significant Change  ____ Referral

| information reflects a one-time screening | No Deficit | Existing Deficit No Change in Function | New or Existing Deficit - Change in Function |
|---|---|---|---|
| **Does the resident have difficulty with. . . .** | | | |
| DRESSING — upper or lower body dressing, buttons, zippers, velcro, shoes, adaptive aids? | | ✓ | |
| FEEDING — bringing food to mouth, chewing, adaptive aids, weight loss? | | ✓ | |
| SWALLOWING — choking/coughing when eating/drinking, pocketing foods, weight loss? | | ✓ | |
| TOILETING — transferring on / off toilet, managing personal hygiene, managing clothing? | | ✓ | |
| GROOMING / HYGIENE — combing hair, brushing teeth, washing hands / face, shaving, maintaining hygiene? | | ✓ | |
| BATHING / SHOWERING — transferring in / out of shower/tub, washing all body areas in shower/tub/sponge bath? | | ✓ | |
| COMPREHENSION / SAFETY — knowing day/date, room location, DR, bathroom, activities, making safe decisions? | | ✓ | |
| COMMUNICATION/SPEECH AND VOICE — speaking clearly, slurring, mumbling, making needs known? | | ✓ | |
| HEARING — hearing throughout the environment and with various residents / staff? | | ✓ | |
| RANGE OF MOTION — moving arms/legs/hands, contractures, complaints of pain when moving? | | ✓ | |
| POSITIONING — leaning to one side when sitting, falling out of chair/bed, changing position in chair/bed? | | ✓ | |
| SKIN INTEGRITY — wounds / pressure ulcers? | ✓ | | |
| BED MOBILITY — moving in bed with or without assistive devices, going to/from lying position, side to side? | | ✓ | |
| BALANCE — maintaining balance when standing / walking, recovering loss of balance? | | ✓ | |
| TRANSFERS — moving to and from bed/chair/wheelchair, up from floor? | | ✓ | |
| WHEELCHAIR MOBILITY — rolling W/C, managing W/C parts, maintaining proper body alignment in W/C? | | ✓ | |
| AMBULATION — shuffling feet, limping, loss of balance, falling, using walker / cane? | | ✓ | |

**Additional Comments**

Pt c̄ severe cog. + physical limits, grossly non-responsive
to all stimuli (pain occ. per hx) Non-appropriate for skill the

Clinician Gathering Data: _____ OTR/PT  __3/23/06__          Signature / Date

| Physical Therapy: | Occupational Therapy: | Speech Language Pathology: |
|---|---|---|
| ____ Request Evaluation | ____ Request Evaluation | ____ Request Evaluation |
| ✓ No Evaluation | ✓ No Evaluation | ✓ No Evaluation |

# SOCIAL SERVICE PROGRESS NOTES

PATIENT NAME: Joseph Pamphile    DOCTOR: Bregoli's    ADM. NO.

| DATE | |
|------|---|
| | *Admission* |
| 3-21-05 | Mr. Pamphile is a 47 y.o. male who was admitted to Colonial Nursing Home from Brigham & Women's Hospital on 3-21-05. He had presented with Δ mental status + acute renal failure. Has non hodgkins lymphoma. Lumbar puncture showed metastisis to his spine. EEG showed diffuse encephalopathy. Pt. was A+0x3, DNR/DNI. HCP is Pt's girlfriend. Has restraining order against wife. Family + friends visit daily. Haitian. On Hospice of South Shore. |
| 3-23-05 | *Final Note* |
| | Pt expired at 2:10 PM. His passing was peaceful. Girlfriend + hospice social worker were with him. Remains to Cartwright Funeral Home, Randolph — Arden Burns, LICSW |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action 05-11355 JLT

---

UNICARE LIFE & HEALTH INSURANCE CO.
Plaintiff- Stakeholder

v.

CHANTAL PHANOR, RUTH PAMPHILE, BEVERLY PAMPHILE, SONIA
PAMPHILE, WIDLENE CESAR, JUDY PAMPHILE, AND CARTWRIGHT
FUNERAL HOME
Defendants

---

AFFIDAVIT OF CHANTAL PHANOR

I, Chantal Phanor, do hereby swear oath and aver:

1.  I am the defendant in the law suit.
2.  On March 15, 2005, Joseph Pamphile was released from Brigham & Women's Hospital into my care.
3.  I was responsible for caring for Mr. Pamphile from the time of his release until March 21, 2005 when he was re- admitted into the hospital.
4.  I first hand observed Mr. Pamphile's mental state during the period from March 15, 2005 until March 21, 2005.
5.  During the time that Mr. Pamphile was in my care, he was near-independent, alert and oriented.
6.  During this time, I was the only caretaker for Mr. Pamphile. His wife and children were not present and did not witness his physical or mental condition. His sisters were also not present during this time.
7.  On Sunday, March 20, 2006, Mr. Pamphile left my house and went to a party for his birthday at a friend's house.

Signed under the pains and penalties of perjury, this 22nd day of September, 2006.

*/s/ Chantal Phanor /s/*

Chantal Phanor

## CERTIFICATE OF SERVICE

I, Steven C. Goldwyn, Esq., do hereby certify that I served a true copy of Defendant's Opposition to Motion for Summary Judgment by mailing same on this 22nd day of September, 2006.

/s/ Steven C. Goldwyn /s/

Steven C. Goldwyn