UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNICARE LIFE & HEALTH INSURANCE COMPANY | * * |
| Plaintiff-Stakeholder, | * |
| v. | * |
| | *   Civil Action No. 05-11355-JLT |
| CHANTAL PHANOR, RUTH PAMPHILE, BEVERLY PAMPHILE, SONIA PAMPHILE, WIDLENE CESAR, JUDY PAMPHILE, JEFFREY PAMPHILE, BRUNEL PAMPHILE and CARTWRIGHT FUNERAL HOME, | * * * * * * |
| Defendants. | * |

MEMORANDUM

January 30, 2007

TAURO, J.

**Background**

Joseph Pamphile ("Decedent") and Defendant Ruth Pamphile married in 1984. Decedent was a participant in his employer's group life insurance benefit plan. This life insurance policy was provided by Unicare Life & Health Insurance Company ("Plaintiff") and is governed by the federal Employment Retirement Income Security Act ("ERISA"). On November 1, 2001, the Pamphiles separated and Decedent initiated a divorce proceeding in Massachusetts Probate and Family Court.

At that time, the life insurance policy listed Ruth Pamphile as the sole beneficiary. When Decedent commenced the divorce proceeding, the state probate court issued a standard Automatic Restraining Order ("ARO") which prohibited either party from encumbering assets, incurring unreasonable additional debt, changing the beneficiary of any life insurance policy,

pension or retirement plan, or causing the opposing party or minor children to be removed from an existing insurance plan.[1] On November 12, 2004, March 10, 2005, and March 20, 2005, Decedent purportedly executed change of beneficiary forms.[2] The first two changes specified various allocations of funds to Decedent's children (Beverly, Judy, Jeffrey and Brunel) and sisters (Sonia Pamphile and Widlene Cesar). The final change specified that all of the life insurance benefits would go to Defendant Chantal Phanor, Decedent's girlfriend.

Joseph Pamphile died on March 23, 2005. The divorce proceedings were never completed and no final judgment allocating matrimonial assets has ever issued.

On March 28, 2005, Defendant Phanor submitted her claim to Plaintiff Unicare. On April 8, 2005, Unicare received a letter from Defendant Ruth Pamphile claiming that the ARO, as well as Decedent's impaired mental competence, voided subsequent changes to the policy's beneficiary designation. Considering this dispute as to the proper beneficiary, Plaintiff Unicare brought this interpleader action on June 28, 2005, to force the Defendants to litigate the question of who is entitled to the life insurance proceeds. On April 12, 2006, this court allowed Plaintiff Unicare's Motion to Deposit Funds and subsequently dismissed it from the case. Now before the court is a

---

[1] Specifically, the ARO provides in relevant part:
    The following order PROHIBITS either party to a complaint for divorce or separate support from:
    . . .
    (3) Directly or indirectly changing the beneficiary of any life insurance policy, pension or retirement plan, or pension or retirement investment account, except with the written consent of the other party or by Order of the Court.
Movants' Mem. in Supp. of Mot. for Summ. J., Paper #45, Ex. 3.

[2] There are disputes of material facts as to Decedent's mental state and the validity of some of these forms. For purposes of this motion, therefore, the court must assume that the forms were validly executed.

2

Motion for Summary Judgment by Ruth Pamphile and her children ("Movants"), which Defendant Phanor opposes.

**Discussion**

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[3]  While there is substantial dispute as to Decedent's mental compentcy, there is no dispute as to the chronology of the above events and the entry of the state court's ARO.  Movants contend that Ruth Pamphile should receive the entire policy benefit as a matter of law because changes made in violation of the ARO should not be given credit.  In response, Phanor argues that ERISA preempts any such application of the ARO.  Movants argue in the alternative that Ruth Pamphile would be entitled to an equitable constructive trust on any benefits paid to Phanor under the life insurance policy.  Phanor argues that while the First Circuit has not addressed whether such a remedy is proper in an ERISA case, Massachusetts law indicates that an equitable remedy would be inappropriate.  Without resort to any disputed fact, the court concludes as matter of law that Plaintiff is correct on both points.

ERISA requires the plan administrator to discharge duties in accordance with the plan documents.[4]  Here, the policy itself is not in the record.  But there is no dispute that according to the plan, Plaintiff had the duty to pay benefits to the beneficiary ultimately designated by the Decedent.  Movants argue that the ARO modified this obligation by ordering all parties to the divorce to essentially freeze their financial assets.

ERISA preempts "state laws insofar as they may now or hereafter relate to any employee

---

[3] Fed. R. Civ. P. 56(c);  Mulloy v. Acushnet Co., 460 F.3d 141, 145 (1st Cir. 2006).

[4] 29 U.S.C. § 1104(a)(1)(D) (2007).

benefit plan."[5] It is well established "that designating a beneficiary of an ERISA plan has connections with or references to that plan" and that laws restricting such designation are therefore preempted.[6] Congress created an exception for qualified domestic relations orders ("QDROs"), likely because it recognized the importance of allowing divorce courts to allocate all financial assets, including pensions and life insurance,[7]. Courts have held that this exemption applies to all types of ERISA plans.[8]

A domestic relations order is "any judgment, decree, or order" which "(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and (II) is made pursuant to a State domestic relations law."[9] The ARO (though not a final judgment) is a domestic relations order because it was issued pursuant to state law and freezes marital property rights pending determination of alimony and child support.[10]

A domestic relations order is a QDRO if it "creates or recognizes the existence of an

---

[5] 29 U.S.C. § 1144(a).

[6] Sun Life Assur. Co. of Can. v. Sullivan, 206 F. Supp. 2d 191, 196 (D. Mass. 2002) (citing decisions from six circuit courts). See also Pharm. Care Mgmt. Ass'n v. Rowe, 429 F.3d 294, 302 (1st Cir. 2005).

[7] See Boggs v. Boggs, 520 U.S. 833, 854 (1997) ("The QDRO provisions protect those persons who, often as a result of divorce, might not receive the benefits they otherwise would have had available during their retirement as a means of income.").

[8] See Barrs v. Lockheed Martin Corp., 287 F.3d 202, 209 n.7 (1st Cir. 2002). See also Metropolitan Life Ins. Co. v. Wheaton, 42 F.3d 1080, 1083 (7th Cir. 1994).

[9] 29 U.S.C. § 1056(d)(3)(B)(ii) (2007).

[10] Supp. R. of the Prob. Ct. R. 411 (2006).

alternate payee's right to . . . receive all or a portion of the benefits payable with respect to a participant under a plan" and complies with other enumerated requirements. The ARO recognizes the existence of a potential right in Ms. Pamphile to ultimately receive some portion of her husband's life insurance benefit. Because such a right would be meaningless if the husband were allowed to simply change the beneficiary, the Massachusetts courts routinely order all parties to a divorce to refrain from such action. Phanor contends that the state court order created no rights, but simply imposed certain obligations under threat of contempt. As will be further explained below, this court does not accept this argument. The ARO exists to protect the rights of parties to a divorce and is an order which meets the first definition of a QDRO by recognizing the existence of an alternate right to benefits that exists outside the benefit plan documents.

To be a QDRO, an order must also meet other requirements. A domestic relations order is only a QDRO if the "order clearly specifies–"

> (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined.
> (iii) the number of payments or period to which such order applies, and
> (iv) each plan to which such order applies.[11]

Read literally, the state court's ARO fails to meet every one of these requirements. While the First Circuit has not considered the issue, some circuit courts advise against reading the statute too literally.[12] These courts conclude that the "[t]he requirement of clear specification is designed

---

[11] 29 U.S.C. § 1056(d)(3)(C) (2007).

[12] Metropolitan Life Ins. Co. v. Marsh, 119 F.3d 415, 422 (6th Cir. 1997) ("We believe the divorce decree here was specific enough to substantially comply with ERISA's requirements. No essential information is lacking."); Wheaton, 42 F.3d at 1084-85 ("The domestic relations

to spare the plan administrator from litigation-fomenting ambiguities as to who the beneficiaries designated by the divorce decree are"[13] and therefore it is enough if the order is not ambiguous.[14] Another judge in the District of Massachusetts has recognized this modification and has appropriately limited the degree of tolerable ambiguity.[15]

A specific examination of the domestic relations orders in those cases may be helpful. In Marsh, the Sixth Circuit held that a decree which identified a policy "carried through Metro Life Ins. Co. and maintained at [decedent's] place of employment" was not ambiguous, but rather clearly identified a specific policy.[16] The court also held that failure to specify the number of payments or period to which such order applies was not fatal as a life insurance policy would be paid in a lump sum on a decedent's death.[17] In Wheaton, the Seventh Circuit, per Judge Posner, similarly held that a decree ordering decedent to "maintain . . . the life insurance which is presently carried through his/her employer with the children of the parties named as sole and irrevocable primary beneficiaries . . ." was not ambiguous as to which policy the decree referenced.[18] The

---

order was therefore specific enough to serve ERISA's purposes. To require more specificity would defeat the purpose of the provision creating an exception to inalienability for qualified domestic relations orders, at least in the present case, and for a purely theoretical gain in certainty. It is asking too much of domestic relations lawyers and judges to expect them to dot every i and cross every t in formulating divorce decrees that have ERISA implications.").

[13] Wheaton, 42 F.3d at 1085.

[14] Marsh, 119 F.3d at 422.

[15] Sun Life Assur. Co. of Can. v. Sullivan, 206 F. Supp. 2d 191, 197 (D. Mass. 2002) (Collings, M.J.).

[16] Marsh, 119 F.3d at 422.

[17] Id.

[18] Wheaton, 42 F.3d at 1085.

court held that the decree's failure to specify each child's share was not fatal in light of established state law which presumed equal shares.[19] Additionally, the decree's failure to specify the children's addresses was permissible because they lived with their parents whose addresses were in the decree.[20] In Sun Life, the Massachusetts district court concluded that a 1985 divorce decree which required that decedent maintain a certain amount of his "group life insurance" for his ex-wife could not, under any standard, be held to specifically identify a policy acquired in 1999.[21]

These precedents consistently establish the proposition that as long as the policy and beneficiary information is specifically ascertainable, it need not be specifically spelled out. The divorce order in Sun Life was properly preempted because it was open-ended, indefinite, and could apply to any number of future policies. In this way, precedent establishes that the statute only requires that a party reading the order be able to understand which specific people, percentages, periods, and policies it affects.

Two other federal courts have found similar state temporary restraining orders to be preempted.[22] But, using the liberal interpretation of the statute spelled out in Marsh and

---

[19] Id.

[20] Id.

[21] Sun Life, 206 F. Supp. 2d at 197.

[22] Cent. States, Se. & Sw. Areas Pension Fund v. Howell, 227 F.3d 672, 678 (6th Cir. 2000) ("As the district court properly concluded, the injunction entered by the domestic relations court did not comply with the requirements of Section 1056 (d)(3)(C). Other than naming the parties, the Michigan court order did not provide any of the required information, e.g., Kenneth's address, the amount or percentage of the participant's benefits to be paid by the plan, the number of payments or durational period of the order, or the name of the plan. This injunction neither literally nor substantially complied with the requirements set forth in Section 1056."); Irwin v. Principal Life Ins. Co., No. 04-4052, 2005 U.S. Dist. LEXIS 34077, at *41 (D. Kan. December

7

Wheaton, this court reaches a different result.

The first statutory requirement is that the order contain the names and addresses of the plan participant and alternative payees.[23] Here, the ARO itself contains no names or addresses. The ARO is simply a standard form issued by the state court that is served with the underlying divorce complaint.[24] The ARO would be meaningless if not read in conjunction with the complaint. The divorce complaint in this case contained the name and address of the parties, Ruth and Joseph Pamphile.[25] It also listed the names of the children.[26] At the time the complaint was filed, all of the children were under the age of eighteen.[27] A reasonable party, reading the complaint in conjunction with the ARO, would be aware of the names and addresses of those people whose policies were being restricted and those who had the potential to benefit from such a restriction.

To avoid preemption, an order must also specify "the amount or percentage of the participant's benefits to be paid."[28] The ARO does not literally specify any amount to be paid. Instead, it makes clear that the parties to the divorce will make no alteration to the beneficiary designations of their respective plans and policies. This order is simple and unambiguous. No

---

16, 2005) (where the parties conceded the TRO was not a QDRO).

[23] 29 U.S.C. § 1056(d)(3)(C)(i).

[24] See Supp. R. of the Prob. Ct. R. 411.

[25] Movants' Mem. in Supp. of Mot. for Summ. J., Paper #45, Ex. 2.

[26] Id.

[27] Id.

[28] 29 U.S.C. § 1056(d)(3)(C)(ii).

8

amount and no percentage should go to anyone other than the beneficiary designated on the date the ARO enters into effect.

Additionally, a QDRO must specify the "period to which such order applies."[29]  On this count, the ARO is also unambiguous.  The ARO is effective against the Plaintiff from the date of the filing of the complaint and against the defendant once served.[30]  It remains in force until the occurrence of one of five enumerated events, such as a subsequent court order, an authorized agreement of the parties, or dismissal of the action.[31]  ERISA requires that the order specify a period.  It does not require the period be of definite length.  Upon reading the ARO, a plan administrator would know how to determine if the ARO was still in effect.  In this way, the ARO unambiguously specifies a period.

To qualify as a QDRO, a domestic relations order also much clearly specify "each plan to which such order applies."[32]  The terms of the ARO forbid "changing the beneficiary of any life insurance policy."[33]  This broad proscription would be preempted if it applied prospectively to unspecifiable after-acquired insurance policies.[34]  But by using the word "changing," the ARO makes clear that it is only referring to existing life insurance policies.  This provision of the ARO would not prevent a party from acquiring new life insurance with a different beneficiary.

---

[29] 29 U.S.C. § 1056(d)(3)(C)(iii).

[30] Movants' Mem. in Supp. of Mot. for Summ. J., Paper #45, Ex. 3.

[31] Id.

[32] 29 U.S.C. § 1056(d)(3)(C)(iv).

[33] Movants' Mem. in Supp. of Mot. for Summ. J., Paper #45, Ex. 3.

[34] See, e.g., Sun Life, 206 F. Supp. 2d at 197.

Although somewhat broader than the language in <u>Marsh</u> and <u>Wheaton</u>, this case is more like those cases than it is like <u>Sun Life</u>. The order does not directly state the name of the affected policies, but, an informed reader could unambiguously deduce what policies were implicated–the closed set of all existing policies. Holding those policies subject to the ARO does not impose uncertainty or conflicting obligations.

Finally, to be a QDRO, an order also must not order the plan to provide any benefit not provided in the plan documents, require the plan to provide increased benefits, nor conflict with a prior QDRO.[35] The ARO simply restricts changes in beneficiary designations. It does not otherwise alter the terms of the plan or burden the plan administrator with undue responsibilities.

The state court's ARO clearly states that all existing policies should be frozen while the order is in effect. The purpose of this freeze is preserve the assets so the court can properly distribute them. The effect of this freeze is that the existing beneficiaries receive all of the benefits until any divorce becomes final. This effect is necessary to accomplish the purpose, does not conflict with the goals of ERISA, and is not ambiguous. This court therefore concludes that the Automatic Restraining Order issued by the Massachusetts Probate and Family Court is a Qualified Domestic Relations Order under ERISA.

Phanor notes that "nowhere on the order is it stated that non-compliance with the order would result in specific performance of any of the terms of the order, including a change in the beneficiary of the life insurance policy."[36] Phanor states that the order instead specifies that the consequence for violation will be contempt of court. Phanor reasons that it would therefore be

---

[35] 29 U.S.C. § 1056(d)(3)(D).

[36] Phanor's Mem. in Opp. re. Mot. for Summ. J., Paper #50, p. 8.

inappropriate to read the ARO so as to undo changes in beneficiary designations. This argument is not compelling. Although contempt is specified as a remedy, it does not follow that contempt is the only remedy. As this case shows, contempt might not always be an adequate deterrent to those who would defy the orders of probate court. In fact, Massachusetts courts often use equitable remedies to enforce rights and undo actions taken in defiance of divorce decrees, reasoning that such actions constitute a fraud on the court.[37]

Phanor argues that these Massachusetts cases are distinguishable as they involved defiance of final settlements or judgments that incorporated a considered and permanent distribution of assets. Here, the probate court's order simply froze assets pending a final determination of an equitable division of assets. This point does raise a serious concern. By enforcing the ARO, this court will award the entire life insurance benefit to Ms. Pamphile. It is possible, however, that had the divorce court reached a final judgment, it would have determined she was entitled to something less, perhaps even no life insurance benefits. In this way, enforcing the ARO results in a possible windfall for Ms. Pamphile.

This result is preferable to the alternative of allowing Decedent to ignore the ARO without consequence. The probate court can only make a meaningful final division of assets if parties comply with the ARO and do not shelter their assets. Decedent should not be allowed to accomplish an unlawful modification of assets by dying before the entry of a final judgment. For this reason, it is appropriate to interpret the ARO as an order conferring enforceable and meaningful rights on the parties to a divorce.

---

[37] See Foster v. Hurley, 826 N.E.2d 719, 724 (Mass. 2005) (imposing a constructive trust on proceeds of a life insurance policy existing at the time of the divorce decree, but refusing to do so for an after-acquired policy); Hurlbut v. Hurlbut, 665 N.E.2d 1018, 1022 (Mass. App. Ct. 1996).

11

Other case law is consistent with this conclusion.[38] Though the Massachusetts Supreme Judicial Court has considered the issue, it has not specifically ruled on whether it would impose equitable relief for violation of an ARO.[39]  In Gleed, the court reversed an imposition of a constructive trust for an alleged violation of an ARO because the specific terms of the ARO were not actually violated.[40]  The court did not express hostility to the idea that equitable relief would be appropriate for an actual violation of the ARO.[41]  Furthermore, although the other federal district court that analyzed a temporary order found it to be preempted, that court imposed equitable remedies under Kansas state law.[42]

**Conclusion**

The proper liberal reading of ERISA, 29 U.S.C. § 1056(d)(3)(C), shows that the

---

[38] See David P. Chapus, Annotation, Divorce and Separation: effect of court order prohibiting sale or transfer of property on party's right to change beneficiary of insurance policy, 68 A.L.R. 4th 929 (2006) (collecting cases and noting the distinction between enforcement of orders which specifically reference insurance policies and those that simply reference shared property in general).

[39] Gleed v. Noon, 614 N.E.2d 676, 678 (Mass. 1993).

[40] Id. (finding that reassigning life insurance beneficiaries did not violate the ARO, which at the time simply prohibited transferring or encumbering certain assets).

[41] Id.

[42] Irwin, 2005 U.S. Dist. LEXIS 34077, at *47-48 ("It is undisputed that Stephen ignored the TRO and changed the beneficiary to these life insurance policies anyway.  The purpose of the restraining order in this case was to preserve the 'status quo between the divorcing parties as to marital property.'  Kansas cases appear to conclude that a TRO such as this must specifically prohibit changes in beneficiaries to life insurance policies to be effective.  A general order prohibiting the 'disposal' of property is insufficient.  Here, the TRO did specifically prohibit Stephen from changing his beneficiary designation.  Much like the deceased in Hile, Stephen had a legal obligation to refrain from changing his life insurance beneficiaries and preserve the status quo pending his divorce action.  In intentionally ignoring the TRO by changing the primary life insurance beneficiary, Stephen committed an actual or constructive fraud upon both Cathi and the Butler County District Court." (footnotes omitted)).

Massachusetts Probate Court's ARO is sufficiently unambiguous to avoid preemption as a QDRO. Because such an ARO must be enforceable, and because Massachusetts courts likely would enforce it using equitable remedies,[43] it is appropriate to allow the QDRO to undo subsequent unlawful changes in Decedent's life insurance policy. Accordingly, Movant's <u>Motion for Summary Judgment</u> is ALLOWED. Ruth Pamphile is entitled to the funds deposited with the court by Plaintiff Unicare. An order will issue.

    /s/ Joseph L. Tauro
United States District Judge

---

[43] It is worth noting that because of this equitable remedy, the result would be the same even if the ARO were preempted. Though the First Circuit has not ruled on the issue, other circuits have established that federal courts may avoid preemption by applying state equitable remedies to monies after they are paid in accordance with ERISA. <u>Central States</u>, 227 F.3d at 678-79. Accordingly, out of an abundance of caution, this court holds alternatively that the <u>Motion for Summary Judgment</u> be ALLOWED under such a theory.